

2005 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

4-13-2005

# USA v. Remoi

Precedential or Non-Precedential: Precedential

Docket No. 03-2071

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2005

Recommended Citation

"USA v. Remoi" (2005). *2005 Decisions.* Paper 1281.
http://digitalcommons.law.villanova.edu/thirdcircuit_2005/1281

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2005 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———

No. 03-2071

———

UNITED STATES OF AMERICA

v.

OKOCCI REMOI,

Appellant

———

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(Dist. Ct. No. 02-cr-00804-1)
District Judge: Honorable James K. Gardner

———

Submitted Under Third Circuit LAR 34.1(a)
June 24, 2004

Before: NYGAARD, McKEE, and CHERTOFF,[*]
Circuit Judges.

(Filed: April 13, 2005)

MAUREEN KEARNEY ROWLEY
Chief Federal Defender
DAVID L. McCOLGIN
Supervising Appellate Attorney
ELIZABETH T. HEY
Assistant Federal Defender
Defender Association of Philadelphia
Federal Court Division
601 Walnut Street
Suite 540 West, Curtis Center
Independence Square West
Philadelphia, PA 19106
Counsel for Appellant

PATRICK L. MEEHAN
United States Attorney
LAURIE MAGID
Deputy United States Attorney for Policy and Appeals
ROBERT A. ZAUZMER
Assistant United States Attorney Senior Appellate Counsel

---

[*]This case was submitted to the panel of Judges Nygaard, McKee, and Chertoff. Judge Chertoff resigned after submission, but before the filing of the opinion. The decision is filed by a quorum of the panel. 28 U.S.C. § 46(d).

PAUL G. SHAPIRO
Assistant United States Attorney
Office of United States Attorney
615 Chestnut Street
Philadelphia, PA 19106
Counsel for Appellee

———

OPINION

———

Per Curiam.

Defendant Okocci Remoi, an alien, was convicted by a jury of knowingly preventing and hampering his deportation under a final order of removal. He was sentenced to sixty-four months imprisonment and two years of supervised release. Remoi appeals the conviction and sentence on the grounds (1) that the District Court erroneously instructed the jury regarding the burden of proof for Remoi's entrapment defense, and (2) that Remoi's previous conviction for criminal sexual contact with a helpless victim was incorrectly treated as a "crime of

3

violence" for sentencing purposes. We have jurisdiction of the appeal under 28 U.S.C. § 1291 and 18 U.S.C. § 3742. We will affirm the conviction. We vacate and remand to the District Court for resentencing under *United States v. Booker*, 543 U.S. __, 125 S. Ct. 738 (2005).

Briefly, the facts are as follows. Remoi was lawfully in the United States as a student at Rutgers University until he was expelled from school in 1990, based upon convictions for two counts of criminal sexual contact. The Immigration and Naturalization Service began deportation proceedings against Remoi in 1994. On September 21, 2001, the Board of Immigration Appeals issued a final order of removal against Remoi. He then filed a petition for habeas corpus (his third) challenging that order, but did not obtain a stay of removal.

By September 3, 2002, the INS had completed the arrangements necessary to return Remoi to his country of origin,

4

Uganda. That day, two officers served Remoi with a warrant of deportation. Remoi was aware there was no stay in effect, but sought to telephone the district judge before whom his habeas petition was pending. That request was denied by the agents, who warned Remoi that if he failed to depart or sought to hinder his departure, he could be charged with a crime. Nevertheless, at the airport, Remoi physically resisted efforts to place him on the airplane. The agents decided to return him to custody.

A grand jury charged Remoi, who was subject to a final order of removal under 8 U.S.C. § 1227(a), with one count of knowingly preventing and hampering his departure pursuant to such an order, in violation of 8 U.S.C. § 1253(a)(1)(C). After a two day jury trial, Remoi was convicted. At sentencing, the District Court applied section 2L1.2 of the U.S. Sentencing Guidelines Manual, and assigned a base offense level of eight.

Remoi's sentence was subject to increase, however, because of the nature of the crimes that formed the basis of his removal. The Court adjusted the offense level upward by sixteen levels based upon Remoi's two prior convictions for criminal sexual contact in New Jersey, which the Court determined were "crimes of violence" within the meaning of section 2L1.2. The District Judge reached that determination by considering the presentence report, which explained that Remoi's sexual contact involved unauthorized sexual touching of female students who were intoxicated or incapacitated. Remoi was sentenced to a term of imprisonment of sixty-four months.

## I.

Remoi sought and obtained from the District Judge an instruction on the defense of entrapment. He argues now—although he did not object in District Court—that the instruction impermissibly shifted the burden of proof regarding

this defense from the government to the defendant.

We need not determine whether the instruction taken as a whole was error, let alone plain error, because Remoi was simply not entitled to an instruction on the defense of entrapment. The factual predicate to the entrapment defense is some showing that the government induced the defendant to commit the crime. *See United States v. Wright*, 921 F.2d 42, 44 (3d Cir. 1990). Here, there was no evidence of inducement.

Remoi's theory is that the agents induced him to commit the crime by warning him against resistance to removal, and by rejecting his unlawful request not to be removed. To put it charitably, this argument is fanciful. There was no evidence that the agents suggested to Remoi that if he resisted them he might be able to avoid removal. To the contrary, they advised him that resisting removal would be a violation of the law. The agents also did not prompt Remoi to commit a crime when they

7

refused to delay his departure so that he could telephone a judge. Remoi's argument really boils down to the claim that by enforcing the law, the agents prompted him to break it. That reasoning refutes itself.

Since Remoi was not entitled to any entrapment instruction, any flaw in that instruction was not plain error. *See United States v. Armocida*, 515 F.2d 49, 55 (3d Cir. 1975).

## II.

Although Remoi is on stronger ground in arguing that the District Court erred by finding that his prior convictions involved crimes of violence, his argument nevertheless fails. At the time of his sentencing, section 2L1.2 of the U.S. Sentencing Guidelines Manual, entitled "Unlawfully Entering or Remaining in the United States," provided for an enhanced sentence when an alien unlawfully remained after being ordered removed for committing a "crime of violence." The Guidelines

8

defined a "crime of violence" as any of the following: "(I) an offense under federal, state, or local law that has as an element the use, attempted use, or threatened use of physical force against the person of another; and (II) includes murder, manslaughter, kidnapping, aggravated assault, forcible sex offenses (including sexual abuse of a minor), robbery, arson, extortion, extortionate extension of credit, and burglary of a dwelling." U.S.S.G. § 2L1.2, app. n.1(B)(ii) (2002).

Sentencing under this provision, the District Court concluded that Remoi had been convicted of crimes of violence based on the facts underlying his previous convictions. Remoi argues—and the Government essentially concedes for purposes of argument—that the determination whether his prior convictions fit within the definition of crimes of violence must be undertaken on a categorical basis, looking only to the elements of the offense of conviction and not the underlying

facts. That categorical approach is the one we have taken when analyzing how state statutes fit within the Sentencing Guidelines. *United States v. Parson*, 955 F.2d 858, 872–73 (3d Cir. 1992); *see also United States v. Rodriguez-Rodriguez*, 323 F.3d 317, 318–19 (5th Cir. 2003). Thus, the District Court's determination can only be upheld if we can ascertain that the state crimes of which Remoi was convicted fall within the definition of crime of violence as a matter of its elements.

This analysis requires three steps. First, we must establish for which specific crimes Remoi was convicted. Second, we must interpret the necessary elements of those crimes. Third, we must determine whether those elements necessarily bring the state crime within one of the definitions of section 2L1.2, as we construe them. *See, e.g., Francis v. Reno*, 269 F.3d 162, 171–72 (3d Cir. 2001).

A.

At the time of Remoi's convictions in 1990, New Jersey law criminalized several forms of sexual contact, including both the use of physical force or coercion and penetration with a helpless victim. Section 2C:14-2c of the New Jersey statute provided in pertinent part:

> An actor is guilty of sexual assault if he commits an act of sexual penetration with another person under any one of the following circumstances: (1) The actor uses physical force or coercion, but the victim does not sustain severe personal injury; (2) The victim is one whom the actor knew or should have known was physically helpless, mentally defective or mentally incapacitated . . .

N.J. Stat. Ann. §2C:14-2c (1990).

The Government argues that we can narrow Remoi's convictions to subsection (2), dealing with a victim who was "physically helpless, mentally defective or mentally incapacitated." To accomplish that narrowing, we are directed to the charging instrument on which Remoi was convicted in

11

1990. That charging document explicitly alleges two separate violations of the criminal sexual contact statute based on contact with victims who were "physically helpless." (App. at 3).

Even under the categorical approach, we have been willing to consider charging documents in refining the state offense which we examine. *United States v. Preston*, 910 F.2d 81, 85 (3d Cir. 1990); *see also United States v. Spell*, 44 F.3d 936, 939 (11th Cir. 1995). In this instance, we can rely on the charging instrument not to establish the underlying facts, but simply to narrow the statutory provision to which our categorical analysis must apply. Accordingly, we proceed to analyze, applying de novo review, the elements of N.J.S.A. §2C:14-2c(2) and to see those elements fit within the Guidelines' definition of "crime of violence."[1] *See United*

---

[1]We may take judicial notice of the charging instrument as a court record that was submitted as part of Remoi's habeas

12

*States v. McQuilkin*, 97 F.3d 723, 727 (3d Cir. 1996).

B.

New Jersey Statute section 2C:14-2c(1) requires the use

of "physical force" to effect an "act of sexual penetration." But

subsection c(2)—under which Remoi was convicted—requires

instead that the victim of "penetration" have been "physically

---

petition in United States District Court. FED. R. EVID. 201.
Remoi argues that to do so is improper because the document
was not relied upon by the District Court at sentencing. We
disagree. Although the District Court's analysis did not take
account of this judicial record, it would be pointless to remand
the case simply to have the District Judge take notice of that
which we may notice ourselves. *See In re Indian Palms Assoc.,
Ltd.*, 61 F.3d 197, 205–06 (3d Cir. 1995) ("Judicial notice may
be taken at any stage of the proceeding, including on appeal, as
long as it is not unfair to a party to do so and does not
undermine the trial court's factfinding authority.") (citations
omitted); *Werner v. Werner*, 267 F.3d 288, 295 (3d Cir. 2001)
("A court may take judicial notice of an adjudicative fact if that
fact is not subject to reasonable dispute . . . [and a] judicially
noticed fact must either be generally known within the
jurisdiction of the trial court, or be capable of accurate and
ready determination by resort to sources whose accuracy cannot
reasonably be questioned.").

13

helpless" or "mentally defective or incapacitated." Thus, the sexual contact for which Remoi was convicted does not require physical force; it may be satisfied by proof that the contact occurred through exploitation of the victim's helplessness.

## C.

As we have noted, at the time of Remoi's sentencing, the Sentencing Guidelines interpreted the term "crime of violence" as follows: "(I) an offense under federal, state, or local law that has as an element the use, attempted use, or threatened use of physical force against the person of another; and (II) includes murder, manslaughter, kidnapping, aggravated assault, forcible sex offenses (including sexual abuse of a minor), robbery, arson, extortion, extortionate extension of credit, and burglary of a dwelling." U.S.S.G. § 2L1.2, app. n.1(B)(ii) (2002).

In effect, the Guidelines set forth two paths to finding a

14

state offense such as Remoi's to be a crime of violence.[2]  Under

the former, we must assess whether the state crime has the use

or threat of "physical force" as an element of the offense.  That

path is not applicable here because, as the Government

concedes, the literal language of N.J.S.A. 2C: 14-2c(2) does not

require physical force as an element.  Indeed, it is the absence

of physical force as an element that distinguishes subsection

---

[2] For an offense to qualify as a "crime of violence" under section 2L1.2, it is enough that an offense either falls under the general definition in the first subsection or is included among the enumerated offenses in the second subsection.  The logical reading of the "crime of violence" definition in section 2L1.2 compels us to believe that the two subparts represent different ways of defining "crime of violence." We adopt the disjunctive reading of the definition, a view adopted by other circuits that have addressed the same issue. *See United States v. Munguia-Sanchez*, 365 F.3d 877, 880–81 (10th Cir. 2004); *United States v. Vargas-Garnica*, 332 F.3d 471, 473–74 (7th Cir. 2003); *United States v. Pereira-Salmeron*, 337 F.3d 1148, 1151–53 (9th Cir. 2003); *United States v. Fuentes-Rivera*, 323 F.3d 869, 872 (11th Cir. 2003); *United States v. Rayo-Valdez*, 302 F.3d 314, 319–20 (5th Cir. 2002); *United States v. Gomez-Hernandez*, 300 F.3d 974, 978–79 (8th Cir. 2002).

c(2) from subsection c(1).[3]

If subsection c(2) is to be treated as a "crime of violence," therefore, it must be by way of the second path set forth in the application note. That is, the state violation must constitute a "forcible sex offense." Remoi vigorously contends that the generic term "forcible sex offense" excludes the state crime under which he was convicted, i.e., sexual contact with a "physically helpless, mentally defective or mentally incapacitated" victim. Instead, Remoi asserts that a "forcible sex offense" requires that there be some element of physical force applied against the victim, going beyond mere exploitation of the victim's helplessness.

We disagree. As we have observed, the first subpart of

---

[3] *But see United States v. Rowland*, 357 F.3d 1193, 1197–98 (10th Cir. 2004) (suggesting nonconsensual sexual contact involves substantial risk of the application of physical force).

16

the application note defined crime of violence in terms of "physical force." The second subpart—on which we rely here—used the term "forcible" without the antecedent modifier "physical." Because this difference appeared within the same application note, we must conclude that it was deliberate, and that the Sentencing Commission did not mean to limit "forcible sexual offenses" to those involving the application of direct physical force, as opposed to some other type of compulsion. Remoi's reading of the Guidelines, to limit "forcible" to "physically forcible," would transform "forcible sexual offenses" listed in subparagraph II of the application note to section 2L1.2 into mere surplus to subparagraph I. We reject this interpretation. "'[C]ourts should avoid a construction of a statute that renders any provision superfluous.'" *United Steelworkers of Am. v. North Star Steel Co.*, 5 F.3d 39, 42 (3d Cir. 1993) (quoting *Pennsylvania v. United States Dept. of*

17

*Health & Human Servs.*, 928 F.2d 1378, 1385 (3d Cir. 1991)).

Another feature of the text reinforces our view that forcible penetration includes penetration effected by the exploitation of helplessness. The application note expressly defines "forcible sexual offenses" as "including sexual abuse of a minor." U.S.S.G. § 2L1.2, Application Note 1(B)(ii). Even in the absence of physical force, therefore, sexual crimes perpetrated against minors are deemed by the Sentencing Commission to be per se "forcible offenses" and thus "crimes of violence."

The underlying legal theory, of course, is that because a minor lacks legal capacity to consent to sexual relations, any such relations are 'forcible.'" *State v. Thomas*, 731 A.2d 532, 534 (N.J. Super. Ct. App. Div. 1999) ("[A] minor . . . is considered incapable of giving such permission or consent under our law.") (citing N.J. STAT. ANN. §§ 2C:14-2a(1), 2b);

18

*see also United States v. Velaszquez-Overa*, 100 F.3d 418, 422 (5th Cir. 1996) ("[Sexual crimes against minors] are generally perpetrated by an adult upon a victim who is not only smaller, weaker, and less experienced, but is also generally susceptible to acceding to the coercive power of adult authority figures. A child has very few, if any, resources to deter the use of physical force by an adult intent or touching the child.").

That logic applies to other types of vulnerable victims. A victim who is "physically helpless, mentally defective or mentally incapacitated" is, like a child, incapable of offering consent. Therefore, we have no difficulty finding that, just as sexual abuse of a minor is included in the definition of a "forcible sexual offense" under section 2L1.2, so, too, penetration against a "physically helpless, mentally defective or mentally incapacitated" victim equally constitutes a "forcible sexual offense" under section 2L1.2.

19

Our interpretation comports with the Sentencing Commission's recent commentary clarifying its definition of "crime of violence."[4]  We may apply that clarification to Remoi's conviction.  *Cf. United States v. Brennan*, 326 F.3d 176, 197 (3d Cir. 2003) ("[W]hen an amendment is a mere clarification, rather than a substantive change to the Guidelines, its application does not violate the ex post facto clause.") (emphasis omitted); *Stinson v. United States*, 508 U.S. 36 (1993) (providing that Guidelines Commentary interpreting or explaining the Guideline provisions is authoritative unless it

---

[4] The Sentencing Commission changed the definition of a "crime of violence" under section 2L1.2 to any of the following: "murder, manslaughter, kidnapping, aggravated assault, forcible sex offenses, statutory rape, sexual abuse of a minor, robbery, arson, extortion, extortionate extension of credit, burglary of a dwelling or any offense under federal, state or local law that has an element the use, attempted use, or threatened use of physical force against the person of another." U.S.S.G. § 2L1.2, app. n.1(B)(iii) (2003).

violates the Constitution or federal statute or is inconsistent with or is a plainly erroneous reading of that provision). In November of 2003, the Sentencing Commission explained that in the context of section 2L1.2, an offense may be a "crime of violence" even in the absence of physical force. The Commission provided:

> [T]he amendment adds commentary that clarifies the meaning of the term "crime of violence.". . . . The previous definition often led to confusion over whether the specified offenses listed in that definition, particularly sexual abuse of a minor and residential burglary, also had to include as an element of the offense "the use, attempted use, or threatened use of physical force against the person of another." *The amended definition makes clear that the enumerated offenses are always classified as "crimes of violence," regardless of whether the prior offense expressly has as an element the use, attempted use, or threatened use of physical force against the person of another.*

U.S.S.G. app. C (vol.II), amend. 658, at 401-02 (Supp. 2003) (emphasis added). Thus, one can commit a "forcible sexual

21

offense," an enumerated offense under section 2L1.2, without employing physical force. If a "forcible" sexual offense is not associated with physical compulsion, it must therefore mean a sexual act that is committed against the victim's will or consent.

Finally, our broad interpretation of forcible sexual offense is consistent with the approach taken by most other federal appellate circuits. Whether an offense must involve the use of physical force to be considered a "crime of violence" within the context of section 2L1.2 has been addressed by a number of circuits reviewing sexual crimes against minors. The overwhelming understanding has been that "sexual abuse of a minor—forcible or not—constitutes a crime of violence." *Rayo-Valdez*, 302 F.3d at 316, 318–319 (5th Cir. 2002); *see also Vargas-Garnica*, 332 F.3d at 473–74 (7th Cir. 2003); *Pereira-Salmeron*, 337 F.3d at 1152 (9th Cir. 2003); *Gomez-Hernandez*, 300 F.3d at 979 (8th Cir. 2002) (discussing "crimes

of violence" in the context of § 4B1.1); *United States v. Coronado-Cervantes*, 154 F.3d 1242, 1243–45 (10th Cir. 1998); *United States v. Pierce*, 278 F.3d 282, 290–91 (4th Cir. 2002) (same).

We do observe that the Fifth Circuit recently adopted a limited definition of what constitutes a "forcible sexual offense" under section 2L1.2.  In *United States v. Sarmiento-Funes*, 374 F.3d 336 (5th Cir. 2004), the Court noted analyzed whether a forcible sexual offense included a state statute that simply criminalizes intercourse without consent.  The Court held that the state statute did not necessarily fall within the definition of forcible sexual offenses, noting, "it seems that the adjective 'forcible' centrally denotes a species of force that either approximates the concept of forcible compulsion."  *Id.* at 344.

*Sarmiento-Funes* is distinguishable, however.  The state statute in that case included *any* non-consensual intercourse,

whether or not the victim was a minor or incapacitated.  Lack of consent was broadly defined.  In reasoning that the state statute encompassed non-forcible sexual offenses, the Fifth Circuit expressly reaffirmed that sexual abuse of a minor is a crime of violence.  *Id.*  That ruling, therefore, did not shut the door on treating sexual acts involving other types of helpless victims as "forcible."  We believe, therefore, that the holding of *Sarmiento-Funes* can be reconciled with our ruling today, and with the other rulings of courts of appeals that we have discussed.  Accordingly, we will affirm the conviction.

## III.

Appellant challenges his sentence under *United States v. Booker*, 543 U.S. __, 125 S. Ct. 738 (2005).  Having determined that the sentencing issues appellant raises are best determined by the District Court in the first instance, we vacate the sentence and remand for resentencing in accordance with

*Booker*.

IV.

Accordingly, the judgment of the District Court will be affirmed in part and vacated and remanded in part.