# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

July 13, 2011

No. 10-40500

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA,

Plaintiff - Appellee

v.

JOEL JONATHAN PARAJON HERRERA, also known as Joel Estrada
Gomes, also known as Joel J. Parajon Vaquedana,

Defendant - Appellant

Appeal from the United States District Court
for the Southern District of Texas

Before GARWOOD, SMITH, and STEWART, Circuit Judges.

CARL E. STEWART, Circuit Judge:

Joel Jonathan Parajon Herrera (Herrera) pled guilty to illegal re-entry into the United States. The district court sentenced Herrera to 46 months of imprisonment. In making its sentencing determination, the district court imposed a sixteen-level enhancement for a past conviction, which the district court determined was a "crime of violence" pursuant to United States Sentencing Guidelines (hereinafter Guidelines) § 2L1.2(b)(1)(A)(ii). We AFFIRM.

No. 10-40500

## I.

On December 23, 2009, Herrera was charged by indictment with being found unlawfully in the United States following removal or deportation, in violation of 8 U.S.C. § 1326(a) and (b). A probation officer compiled Herrera's presentence investigation report (PSR). She found that Herrera was indicted for rape in violation of section 5-14-103 of the Arkansas Code and pled guilty to the lesser offense of sexual assault in the second degree in Malvern, Arkansas, on August 21, 2002. He was sentenced to 72 months' imprisonment for violating section 5-14-125 of the Arkansas Code (amended 2003 and 2009) (hereinafter Arkansas conviction). Following this conviction, Herrera was deported to Honduras. This determination was based on documents attached to the PSR—a copy of the criminal information, dated October 9, 2001, charging "Joel Jonathan Parajon" with rape; a copy of the judgment and commitment order, dated August 23, 2002; and a copy of the Departure Report.

Ultimately, the probation officer determined that Herrera's base offense level was 8, under Guidelines § 2L1.2(a).[1] She also determined that the

---

[1] Section 2L1.2 states:

    (a) Base Offense Level: 8

    (b) Specific Offense Characteristic

        (1) Apply the Greatest:

        If the defendant previously was deported, or unlawfully remained in the United States, after--

        (A) a conviction for a felony that is (i) a drug trafficking offense for which the sentence imposed exceeded 13 months; (ii) a crime of violence; (iii) a firearms offense; (iv) a child pornography offense; (v) a national security or terrorism offense; (vi) a human trafficking offense; or (vii) an alien smuggling offense, increase by 16 levels;

        (B) a conviction for a felony drug trafficking offense for which the sentence imposed was 13 months or less, increase by 12 levels;

No. 10-40500

Arkansas conviction constituted a "crime of violence" and recommended imposition of the sixteen-level enhancement in § 2L1.2(b)(1)(A)(ii).    The probation officer recommended a three-level reduction in offense level, under Guidelines §§ 3E1.1(a) and (b), for Herrera's acceptance of responsibility.  Thus, Herrera's total offense level was 21.  In regard to his criminal history, Herrera received 3 criminal history points for the sexual-assault conviction and 3 additional criminal history points for an illegal re-entry.  This gave Herrera 6 criminal history points, which placed him in a criminal history category of III. His criminal history, combined with his offense level of 21, gave Herrera a sentencing range of 46 to 57 months.

On May 25, 2010, the district court sentenced Herrera to serve 46 months in prison, a three-year term of supervised release, and a $100 mandatory special assessment.    In reaching its determination, the district court accepted the probation officer's recommendation in the PSR that Herrera's 2002 Arkansas conviction constituted a crime of violence under § 2L1.2(b)(1)(A)(ii).  Herrera appealed, challenging the sixteen-level crime of violence enhancement.

## II.

## A.

Section 2L1.2 of the Guidelines explains that the offense level for unlawfully entering or remaining in the United States shall be increased by 16 levels if the defendant has a prior conviction for a "crime of violence." § 2L1.2(b)(1)(A)(ii).    The district court's characterization of Herrera's prior

---

(c) a conviction for an aggravated felony, increase by 8 levels;

(D) a conviction for any other felony, increase by 4 levels; or

(E) three or more convictions for misdemeanors that are crimes of violence or drug trafficking offenses, increase by 4 levels.

No. 10-40500

offense as a "crime of violence" is a question of law that we review *de novo*. *United States v. Hernandez-Galvan*, 632 F.3d 192, 196 (5th Cir. 2011).

"Crime of violence" is defined in the Guidelines as:

> . . . any of the following offenses under federal, state, or local law: Murder, manslaughter, kidnapping, aggravated assault, forcible sex offenses (including where consent to the conduct is not given or is not legally valid, such as where consent to the conduct is involuntary, incompetent, or coerced), statutory rape, sexual abuse of a minor, robbery, arson, extortion, extortionate extension of credit, burglary of a dwelling, or any other offense under federal, state, or local law that has as an element the use, attempted use, or threatened use of physical force against the person of another.

U.S. SENTENCING GUIDELINES § 2L1.2, cmt. n.1(B)(iii) (2008). We have interpreted this provision to mean that a prior offense is a crime of violence if it: "(1) has physical force as an element, or (2) qualifies as one of the enumerated offenses." *United States v. Gomez-Gomez* (*Gomez II*), 547 F.3d 242, 244 (5th Cir. 2008) (en banc).[2]

To determine whether a specific offense constitutes one of the enumerated offenses, "this court employs a 'common sense approach' based on the 'generic, contemporary meaning' of the terms used in the Guidelines." *Hernandez-Galvan*, 632 F.3d at 196 (citing *United States v. Moreno–Florean*, 542 F.3d 445, 449 (5th Cir. 2008). In order to decipher a term's "contemporary meaning," we consult sources, such as "the Model Penal Code, Professors LaFave's and Scott's treatises, modern state codes, and dictionaries." *United States v. Fierro–Reyna*, 466 F.3d 324, 327 (5th Cir. 2006). To this end, "[i]f the

---

[2] Our analysis requires a discussion of *United States v. Gomez-Gomez*, 493 F.3d 562 (5th Cir. 2007) and the *en banc* decision vacating that case, *United States v. Gomez-Gomez*, 547 F.3d 242, 244 (5th Cir. 2008). Accordingly, we refer to the cases as *Gomez I* and *Gomez II* respectively.

No. 10-40500

defendant was convicted under a statute following the generic definition with minor variations, or a statute narrower than the generic crime, the sentence enhancement may be applied." *United States v. Santiesteban–Hernandez*, 469 F.3d 376, 378 (5th Cir. 2006). However, "[i]f the statute of conviction prohibits behavior that is not within the plain, ordinary meaning of the enumerated offense, the prior offense is not a crime of violence." *United States v. Olalde-Hernandez*, 630 F.3d 372, 374 (5th Cir. 2011) (citation and internal quotation marks omitted). "We ground this analysis in the statute of conviction rather than the defendant's specific conduct." *Id.* (citation and internal quotation marks omitted).

### B.

On appeal, Herrera argues that the district court erred in applying the sixteen-level enhancement because he claims that his Arkansas conviction did not constitute a "crime of violence." He claims that without the crime of violence enhancement his total offense level would be 13, and coupled with his criminal history category of III, he would only be eligible for a guideline imprisonment range of 18 to 24 months. We disagree and, for the following reasons, conclude that, as a matter of law, a conviction of sexual assault in violation of section 5-14-125 of the Arkansas Code constitutes a "crime of violence."

### 1.

As previously explained, Herrera was charged with rape pursuant to section 5-14-103, but pled guilty to the lesser-included offense of second degree sexual assault pursuant to section 5-14-125. At the time of Hererra's 2002 conviction,[3] section 5-14-125 provided:

---

[3] In its brief, the Government cites a version of section 5-14-125 that was enacted in 2003. However, for purposes of determining whether Herrera's conviction is a crime of violence, we look to the statute in effect at the time of his conviction. *See United States v. Mungia-Portillo*, 484 F.3d 813, 815 (5th Cir. 2007).

5

No. 10-40500

(a) A person commits sexual assault in the second degree if the person:

> (1) Engages in sexual contact with the sex organs of another person by forcible compulsion; or

> (2) Engages in sexual contact of genitalia with another person who is incapable of consent because the person is physically helpless, mentally defective, or mentally incapacitated;

> (3) Being eighteen (18) years of age or older, engages in sexual contact with the sex organs of another person, not the person's spouse, who is less than fourteen (14) years of age; or

> (4)(A) Engages in sexual contact with another person who is less than eighteen (18) years of age and the person:

>> (i) Is employed with the Department of Correction, Department of Community Punishment, any city or county jail, or any juvenile detention facility, and the minor is in custody at a facility operated by the agency or contractor employing the person;

>> (ii) Is a professional under § 12-12-507(b) and is in a position of trust or authority over the minor; or

>> (iii) Is the minor's guardian, an employee in the minor's school or school district, or a temporary caretaker.

> (B) For purposes of subdivision (a)(4)(A) of this section, consent of the minor is not a defense to prosecution.

(b) Sexual assault in the second degree is a Class B felony.

ARK. CODE § 5-14-125 (2001).

We have no documents from which we can determine under what subsection of section 5-14-125 Herrera was found guilty. Therefore, we would typically examine the entire statute to determine whether his conviction

No. 10-40500

constitutes a crime of violence.[4]  *United States v. Rodriguez-Juarez*, 631 F.3d 192, 193 (5th Cir. 2011).  However, under Arkansas law, violations of subsection (a)(3) and (a)(4) are not considered lesser-included offenses of rape.  *See Joyner v. State*, 303 S.W.3d 54, 60–61 (Ark. 2009) (explaining that sexual assault violations that require more elements than rape are not considered lesser-included offenses of rape).  Therefore, because Herrera pled guilty to the lesser-included of offense of rape, our analysis focuses on whether convictions for violating subsections (a)(1) and (a)(2) are crimes of violence.

## 2.

### a.  *Subsection (a)(1)*

Hererra claims that subsection (a)(1), sexual conduct by "forcible compulsion," does not constitute a crime of violence because the definition of "forcible compulsion" is broader than the definition of "forcible sex act" in the Guidelines.  "Forcible compulsion" is defined under Arkansas law as "physical force or a threat, express or implied, of death or physical injury to or kidnapping of any person."  ARK. CODE § 5-14-101.  Thus, a party violates subsection (a)(1) if he engages in sexual conduct by using physical force or certain express or implied threats.  Both acts are crimes of violence under the Guidelines.

To begin, the use of physical force in the commission of a sexual assault is explicitly listed as a crime of violence in the Guidelines.  *See* § 2L1.2, cmt. n.1(B)(iii); *see also Gomez-Gomez II*, 547 F.3d at 244.  Therefore, the limited issue regarding subsection (a)(1) is whether sexual conduct by means of an

---

[4] Although Herrera's PSR describes his crime in detail, we do not consider the summary of facts in a PSR to determine whether a past conviction constitutes a crime of violence. *See United States v. Murillo-Lopez*, 444 F.3d 337, 340 (5th Cir. 2006)  (holding that a court may consider "the charging document, written plea agreement, transcript of the plea colloquy, and any explicit factual findings by the trial judge to which the defendant assented"); *see also Moreno-Florean*, 542 F.3d at 449  (holding that under the categorical approach, the court focuses on the "elements of the offense, rather than the facts underlying the conviction").

explicit or implicit threat of death, physical force, or kidnaping constitutes a crime of violence.

Before "forcible sex offense" was defined in the Guidelines, in *Gomez-Gomez II*, this court, sitting *en banc*, examined the plain, ordinary meaning of the phrase in secondary sources. *Id.* at 247. We held that a violation of California Penal Code § 261 for sexual intercourse accomplished against a person's will by means of duress, which was defined as "a direct or implied threat of hardship, or retribution sufficient to coerce a reasonable person of ordinary susceptibilities," constituted a forcible sex offense. *Id.* (citing CAL. PENAL CODE § 261(b)) (internal quotation marks and ellipses omitted).

In 2008, the Guidelines were amended and forcible sex offense was defined for the first time in the Guidelines. § 2L1.2, cmt. n.1(B)(iii). Therefore, our holding in *Gomez-Gomez II* is no longer applicable to the extent that it defines forcible sex offense because the phrase is defined in the Guidelines. However, forcible sex offense still includes sexual assault by means of a direct or implied threat.

As previously noted, a party commits a forcible sex offense "where consent is . . . coerced." § 2L1.2, cmt. n.1(B)(iii). "Coerced" is not defined in the Guidelines. Therefore, we must determine its contemporary meaning. *See Fierro–Reyna*, 466 F.3d at 327. To this end, in various contexts, the term "coerced" has been broadly construed to include both physical force and threats. The Supreme Court has explained that an individual is coerced to give a confession by both "mental as well as physical" means. *Garrity v. State of New Jersey*, 385 U.S. 493, 496 (1967). The Court explained that "the blood of the accused is not the only hallmark of an unconstitutional inquisition." *Id.* Along the same lines, numerous state statutes define "coerce" or a variation of the term

No. 10-40500

to include both physical force and threats.[5]  Moreover, "coerce" is similarly defined in Black's Law Dictionary as "[t]o achieve by force or *threat*."  BLACK'S LAW DICTIONARY 294 (9th ed. 2009) (emphasis added).

The weight of authority establishes that the "contemporary meaning" of

---

[5] ALA. CODE § 13A-6-151 ("Coercion [constitutes a]ny of the following: . . . Causing or threatening to cause physical injury or mental suffering to any person, physically restraining or confining any person, or threatening to physically restrain or confine any person or otherwise causing the person performing or providing labor or services to believe that the person or another person will suffer physical injury or mental suffering."); ARIZ. REV. STAT. § 13-1307 ("'Coercion' includes: . . .  Abusing or threatening to abuse the law or the legal system."); D.C. CODE § 22-1831 ("'Coercion' means any one of, or a combination of, the following: (A) Force, threats of force, physical restraint, or threats of physical restraint; (B) Serious harm or threats of serious harm; (C) The abuse or threatened abuse of law or legal process."); FLA. STAT. § 985.475 ("'Coercion' means the use of exploitation, bribes, threats of force, or intimidation to gain cooperation or compliance."); LA. REV. STAT. § 14:46.2 ("For purposes of this Section: . . . (2) "Fraud, force, or coercion" means . . . [c]ausing or threatening to cause serious bodily injury."); MD. CODE CRIM. LAW § 9-801 ("'Coerce' means to compel or attempt to compel another by threat of harm or other adverse consequences."); MINN. STAT. § 609.341( "Coercion" means the use by the actor of words or circumstances that cause the complainant reasonably to fear that the actor will inflict bodily harm upon the complainant or another."); MO. REV. STAT. § 570.010 ("'Coercion' means a threat, however communicated."); N.D. CENT. CODE § 12.1-20-02 ("'Coercion' means to exploit fear or anxiety through intimidation, compulsion, domination, or control with the intent to compel conduct or compliance."); N. M. STAT. § 30-9-10 ("[F]orce or coercion" means: (1) the use of physical force or physical violence; (2) the use of threats to use physical violence or physical force against the victim or another when the victim believes that there is a present ability to execute the threats; (3) the use of threats, including threats of physical punishment, kidnapping, extortion or retaliation directed against the victim or another when the victim believes that there is an ability to execute the threats . . ."); OKLA. STAT. tit. 21, § 748(1)(a)–(b) ("'Coercion' means compelling, forcing or intimidating a person to act by . . . threats of harm or physical restraint against any person."); OR. REV. STAT. § 163.730(2) ("Coerce" means to restrain, compel or dominate by force or threat."); TENN. CODE § 39-13-301 ("'Coercion' means: (A) Causing or threatening to cause bodily harm to any person, physically restraining or confining any person or threatening to physically restrain or confine any person; (B) Exposing or threatening to expose any fact or information that, if revealed, would tend to subject a person to criminal or immigration proceedings, hatred, contempt or ridicule."); TEX. PENAL CODE § 1.07(9)(A)–(C) ("'Coercion' means a threat, however communicated: (A) to commit an offense; (B) to inflict bodily injury in the future on the person threatened or another; (C) to accuse a person of any offense."); VT. STAT. tit. 13, § 2635a(A)(1) ("'Coercion' means: (A) threats of serious harm to or physical restraint against any person; (B) any scheme, plan, or pattern intended to cause a person to believe that failure to perform an act would result in serious bodily harm to or physical restraint against any person; or (C) the abuse or threatened abuse of law or the legal process.").

9

coercion is broad and includes both physical force and threats. Thus, sexual conduct through the use of "physical force or a threat, express or implied, to cause fear of death, physical injury, or kidnapping," which are all enumerated offenses in § 2L1.2, is a "forcible sex offense."

### b. *Subsection (a)(2)*

Subsection (a)(2) criminalizes the sexual assault of any party who is "physically helpless, mentally defective, or mentally incapacitated." Although Herrera does not make any arguments regarding subsection (a)(2), we conclude that a violation of subsection (a)(2) is a forcible sex offense and, thus, is a crime of violence. Specifically, the Guideline's definition of forcible sex offense includes sexual acts "where consent to the conduct is involuntary." § 2L1.2, cmt. n.1(B)(iii). A violation of subsection (a)(2) fits within this definition.

Our interpretation of forcible sex offense, to include the conduct described in subsection (a)(2), comports with the contemporary meaning of the term "involuntary." Black's defines "involuntary" as "[n]ot resulting from a free and unrestrained choice; not subject to control by the will." BLACK'S LAW DICTIONARY 905 (9th ed. 2009). The notes following this definition explain that, in the law, "involuntary" is limited to "cases which involve purely physical, physiological, or psychological movements of our limbs, like reflexes and convulsions, movements in sleep, during sleepwalking, or under hypnosis, or due to some disease of the brain, lunacy, or automatism." *Id.* (citing ALAN R. WHITE, GROUNDS OF LIABILITY 60–61 (1985)). In other words, a party commits a forcible sex offense by engaging in sexual conduct with an individual who cannot legally give consent because of physical ailment or mental illness.

The Third Circuit's analysis in *United States v. Remoi*, 404 F.3d 789 (3d Cir. 2006), also supports our interpretation. In that case, the court examined whether the definition of "forcible sex offense" includes consensual "sexual contact with a physically helpless, mentally defective or mentally incapacitated

victim," a violation of one of New Jersey's sexual assault statutes. *Id.* at 794 (internal quotation marks omitted). Although *Remoi* was decided before forcible sex offense was defined in the Guidelines, the logic underlying the Third Circuit's decision is still persuasive.

The court rejected the defendant-appellant's argument that "forcible sex offense requires that there be some element of physical force applied against the victim, going beyond mere exploitation of the victim's helplessness." *Id.* The court explained that it was significant that the definition of "crime of violence" includes a provision for "physical force," separate and apart from the "forcible sex offense" provision. The court interpreted this to mean that "forcible sex offense" is not limited to situations that involve "the application of direct physical force." *Id.* The court explained that its reasoning was further supported by the inclusion of "sexual abuse of a minor" in the definition of a crime of violence. The court reasoned that the "underlying legal theory" for this addition to the definition "is that because a minor lacks legal capacity to consent to sexual relations, any such relations are 'forcible.'" *Id.* at 795 (citing *United States v. Velazquez-Overa*, 100 F.3d 418, 422 (5th Cir. 1996) ("[Sexual crimes against minors] are generally perpetrated by an adult upon a victim who is not only smaller, weaker, and less experienced, but is also generally susceptible to acceding to the coercive power of adult authority figures. A child has very few, if any, resources to deter the use of physical force by an adult intent or touching the child.")) (citation and internal quotation marks omitted).

The court noted that the same "logic applies to other types of vulnerable victims" such as "[a] victim who is physically helpless, mentally defective or mentally incapacitated" because they are "incapable of offering consent." *Id.* at 795 (citation and internal quotation marks omitted). Therefore, the court concluded that it had "no difficulty finding that, just as sexual abuse of a minor is included in the definition of a forcible sexual offense under section 2L1.2," so

is the abuse of individuals who are physically or mentally disabled. *Id.* (internal quotation marks omitted).

The Third Circuit's reasoning reiterates that the Guidelines allow a "criminal violence" enhancement for conduct where, even if the party consents to the sexual conduct, the law recognizes circumstances in which an individual lacks the mental or physical capacity to give proper consent. Thus, because the Third's Circuit's reasoning is persuasive and the contemporary meaning of "involuntary" includes the acts of mentally and physically handicapped individuals, we conclude that a violation of subsection (a)(2) is a forcible sex offense.

## III.

Accordingly, we AFFIRM the district court's judgment, applying a sixteen-level enhancement for Herrera's past conviction for violating section 5-14-125 of the Arkansas Code.