**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court."
Although it is posted on the internet, this opinion is binding only on the
parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2531-16T1

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

ELTON G. CAESAR, a/k/a CAESAR,
and ELTON S. CAESAR,

    Defendant-Appellant.

_____

Submitted May 22, 2018 — Decided June 25, 2018

Before Judges Yannotti and DeAlmeida.

On appeal from Superior Court of New Jersey,
Law Division, Essex County, Indictment No. 11-
11-2104.

The Anthony Pope Law Firm, PC, attorneys for
appellant (Annette Verdesco, on the brief).

Robert D. Laurino, Acting Essex County
Prosecutor, attorney for respondent (Tiffany
M. Russo, Special Deputy Attorney
General/Acting Assistant Prosecutor, of
counsel and on the brief).

PER CURIAM

Defendant appeals from an order entered by the Law Division on December 2, 2016, which denied his petition for post-conviction relief (PCR). We affirm.

I.

A grand jury in Essex County returned a twelve-count indictment, which charged defendant and others with various offenses. Defendant was charged with first-degree carjacking, N.J.S.A. 2C:15-2(a)(2) (count one); first-degree kidnapping, N.J.S.A. 2C:13-1(b)(1) (count two); third-degree aggravated assault, N.J.S.A. 2C:12-1(b)(2) (count three); fourth-degree unlawful possession of a weapon (knife), N.J.S.A. 2C:39-5(d) (count four); third-degree possession of a weapon (knife) for an unlawful purpose, N.J.S.A. 2C:39-4(d) (count five); second-degree conspiracy to commit kidnapping, N.J.S.A. 2C:5-2 and N.J.S.A. 2C:13-1(b)(2) (count six); first-degree kidnapping, N.J.S.A. 2C:13-1(b)(2) (count seven); second-degree aggravated assault, N.J.S.A. 2C;12-1(b)(1) (count eight); first-degree robbery, N.J.S.A. 2C:15-1 (count nine); second-degree unlawful possession of a firearm (handgun), N.J.S.A. 2C:39-5(b) (count ten); and second-degree possession of a firearm (handgun) for an unlawful purpose, N.J.S.A. 2C:39-4(a) (count eleven).

On June 5, 2012, defendant pled guilty to count two (first-degree kidnapping) and count eight (second-degree aggravated

assault). The State agreed to recommend that defendant be sentenced in the second-degree range to a five-year custodial term, with an eighty-five percent period of parole ineligibility, pursuant to the No Early Release Act (NERA), N.J.S.A. 2C:43-7.2. The State also agreed to dismiss the charges against the co-defendants.

At the plea hearing, defendant acknowledged that he had reviewed the plea forms, gave honest answers to the questions, and initialed and signed the forms. Defendant provided the following responses to Question 17 on the plea form:

> 17. a. Are you a citizen of the United States? [Defendant circled "No."]
>
> b. Do you understand that if you are not a citizen of the United States, this guilty plea may result in your removal from the United States and/or stop you from being able to legally enter or re-enter the United States? [Defendant circled "Yes."]
>
> c. Do you understand that you have the right to seek individualized advice from an attorney about the effect your guilty plea will have on your immigration status? [Defendant circled "Yes."]
>
> d. Have you discussed with an attorney the potential immigration consequences of your plea? If the answer is "No," proceed to question 17e. If the answer is "Yes," proceed to question 17f. [Defendant circled "YES."]
>
> e. Would you like the opportunity to do so? [Defendant circled "Yes."]
>
> f. Having been advised of the possible immigration consequences and of your right to

seek individualized legal advice on your immigration consequences, do you still wish to plead guilty? [Defendant circled "Yes."]

In response to the court's questions, defendant stated he understood that if he went to trial and the jury found him guilty on the kidnapping charge, he could be sentenced to up to thirty years in state prison. Defendant told the court he was pleading guilty because he was guilty of the charges.

Defendant provided a factual basis for his plea to kidnapping. He stated that on April 13, 2011, he lured his brother-in-law into his vehicle and would not release him without being harmed. Defendant said he lured his brother-in-law to his house and beat him up. Defendant stated he knew it was unlawful to kidnap the victim "like this" against his will. Defendant also provided a factual basis for his plea to the charge of aggravated assault. He admitted he confronted his brother-in-law and used physical force upon him, causing the victim to sustain serious bodily injury.

The court accepted the plea and found that defendant understood the nature of the charges, received the advice of competent counsel, and knew the maximum penalty that could be imposed. The court determined that defendant voluntarily waived his right to a jury trial, and the plea was not the result of any

threats, force, or coercion. The court found that defendant had provided an adequate factual basis for his plea.

On July 20, 2012, the court sentenced defendant in accordance with the plea to a five-year custodial term, with an eighty-five-percent period of parole ineligibility, pursuant to NERA. Defendant did not file a direct appeal.

On August 20, 2015, defendant filed a pro se petition for PCR, alleging that he did not have the effective assistance of counsel. He claimed his attorney: misinformed him about the immigration consequences of his plea; "cajoled" him into accepting the State's plea offer without informing him of the "pros and cons" of going to trial; failed to investigate his case; did not review the discovery with him; and failed to file pre-trial motions. Defendant also alleged the court did not inform him of the immigration consequences of his plea.

The PCR court assigned counsel to represent defendant. Counsel filed a brief in support of the petition and sought an evidentiary hearing. The PCR judge heard oral argument on August 5, 2016, and granted defendant's application for an evidentiary hearing.

## II.

At the hearing, defendant's trial attorney testified that she has handled more than six hundred cases involving defendants whose

cases raised immigration issues. She stated that when dealing with those clients, she first ascertains whether the defendant is a United States citizen and has any potential immigration issues. She testified that when preparing a defendant for a plea in a criminal case, she reviews the court-generated plea form with the client.

Counsel noted that by the time she prepares a client for entry of a plea, she has already discussed with the client the likelihood or unlikelihood of conviction. She and the client generally discuss the parameters of the plea and any potential immigration consequences. Counsel noted that she is not an immigration attorney, and the client can go seek legal advice regarding immigration "elsewhere." Then, she would go over the plea form and the questions with the client.

Counsel stated that defendant was a former client and she represented him in this matter. Counsel was generally familiar with the case and the charges, and noted that the charges had been resolved with a plea. Counsel testified that she completed the court's standard plea form with defendant.

Counsel was asked if she discussed the immigration consequences of the plea with defendant. She replied that four years had passed since defendant pleaded guilty, and she did not recall her "exact conversation" with defendant. She stated,

A-2531-16T1

however, that she was aware of his immigration status and it was something they discussed. Counsel could not recall whether defendant indicated he wanted to speak with immigration counsel. Counsel also said defendant never indicated he did not want to enter a plea. Rather, it seemed as if defendant wanted to enter the plea.

On cross-examination, counsel acknowledged that she was aware defendant was not a citizen of the United States and that was noted on the plea form. She said defendant had answered "Yes" to the question of whether he understood that his guilty plea could result in his removal from the United States.

Defendant also had acknowledged that he understood he had the right to seek individualized advice regarding the effect his guilty plea would have on his immigration status. Counsel noted that defendant indicated on the form that he had discussed the potential immigration consequences of the plea with an attorney, but he also stated that he would like the opportunity to do so.

Counsel stated that she did not have a specific recollection of whether defendant sought the advice of an immigration attorney. She noted, however, that she knew there were possible immigration consequences, and she discussed them with defendant. Counsel said this included the potential that defendant would be deported or removed from the United States pursuant to a removal proceeding.

Counsel was asked if she knew the crimes that would require deportation and the crimes that could lead to possible deportation. Counsel replied that she was not an immigration attorney, but she was familiar with terms such as a crime of moral turpitude and an aggravated felony. Counsel noted that defendant had been charged with first-degree kidnapping, which was "the top charge." Based on her understanding, counsel said that if convicted, "there was a very good chance that he would be deported."

When asked if she advised defendant there was a "good chance of deportation," counsel replied she did not recall whether she said "good chance." She stated, "I just know that . . . not knowing what another [j]udge would do, that there was a more likely chance that he was going to be deported based on the nature of the crime and his guilty plea."

Counsel testified that based on her discussions with immigration attorneys and her colleagues, an immigration judge could consider the totality of the circumstances in determining whether a person should be deported. She stated she would not give a client an unequivocal statement that the client was "definitely" going to be deported. She did not recall whether defendant spoke with another attorney in her office on this issue.

Counsel further testified that to her knowledge, defendant had not spoken with an immigration attorney outside of her office.

8

She did not recall whether she had encouraged defendant to seek specialized individualized immigration advice from an attorney who practices predominantly in that area of the law. She had no independent recollection of putting the plea on the record.

After hearing arguments by the attorneys, the judge reserved decision. On December 2, 2016, the judge filed a lengthy written opinion in which she concluded that defendant had not established he had been denied the effective assistance of counsel with regard to his plea. The judge found that although his attorney's advice was deficient, defendant failed to show he was prejudiced by the deficient advice. The judge entered an order dated December 2, 2016, denying PCR. This appeal followed.

## III.

On appeal, defendant argues the court committed reversible error by denying his PCR petition. Defendant contends the evidence presented at the evidentiary hearing shows he was denied the effective assistance of counsel with regard to his plea.

Where, as in this case, the PCR court conducts an evidentiary hearing on the petition, we will defer to the court's findings of fact based on live-witness testimony if the court's findings are "supported by sufficient credible evidence in the record." State v. Nash, 212 N.J. 518, 540 (2013). However, we are not required to defer to the PCR court's interpretation of the law, which we

review de novo. Id. at 540-41 (citing State v. Harris, 181 N.J. 391, 415—16 (2004)).

To succeed on his claim of ineffective assistance of counsel, a defendant must meet the test established by Strickland v. Washington, 466 U.S. 668, 686 (1984), and adopted by our Supreme Court in State v. Fritz, 105 N.J. 42, 58 (1987). Under Strickland, the defendant must show that counsel's performance was deficient and, if so, that there was a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694.

Where, as here, the defendant alleges he was denied the effective assistance of counsel with regard to a guilty plea, the defendant must establish that counsel's performance was not "within the range of competence demanded of attorneys in criminal cases." State v. DiFrisco, 137 N.J. 434, 457 (1994) (quoting Tollett v. Henderson, 411 U.S. 258, 266 (1973)). The defendant also must show "there is a reasonable probability that, but for counsel's errors, [the defendant] would not have [pleaded] guilty and would have insisted on going to trial." Ibid. (quoting Hill v. Lockhart, 474 U.S. 52, 59 (1985)). See also State v. Nuñez-Valdéz, 200 N.J. 129, 142 (2009) (quoting DiFrisco, 137 N.J. at 457).

With regard to the first prong of the Strickland test, an attorney has "an affirmative obligation to inform a client-defendant when a plea places the client at risk of deportation." State v. Gaitan, 209 N.J. 339, 356 (2012) (citing Padilla v. Kentucky, 559 U.S. 356, 373—74 (2010)). If the risk of deportation is uncertain, the attorney need only advise the "client that pending criminal charges may carry a risk of adverse immigration consequences"; however, if the risk of deportation is clear, "the duty to give correct advice is equally clear." Ibid. (quoting Padilla, 559 U.S. at 369).

Here, the PCR court found that defense counsel's advice on the immigration consequences of defendant's plea was deficient. The judge noted that the transcripts of the plea hearing and the sentencing proceeding indicated that the immigration consequences of the plea had never been discussed on the record. The judge also noted that in her testimony at the PCR hearing, defendant's attorney testified that she believed she would have told defendant he had a "good chance" of deportation.

The judge found that the advice counsel provided to defendant was legally insufficient under Padilla, because it was "indisputable" defendant's guilty plea made him subject to deportation under the Immigration and Nationality Act (INA), 8 U.S.C. §§ 1101 — 1537. The judge's ruling was legally correct

because both aggravated assault and kidnapping are "crime[s] of violence" under 8 U.S.C.A. § 1101(a)(43)(F), for which a person unlawfully in the United States could be deported. See United States v. Remoi, 404 F.3d 789, 795 n.4 (3d Cir. 2005) (noting that both aggravated assault and kidnapping are "crime[s] of violence" under federal immigration law).

The judge found, however, that defendant had not established the second-prong of the Strickland test for ineffective assistance of counsel. He failed to establish that but for the deficient advice, he would not have pled guilty and would have instead insisted upon going to trial. DiFrisco, 137 N.J. at 457 (citing Hill, 474 U.S. at 59).

The judge noted that this was not a case where there is a presumption of prejudice. Counsel was present when defendant entered the plea, counsel did not have any conflicts of interest, and there were no other manifest aspects of prejudice. The judge also noted that defendant had been charged under the indictment with eleven offenses, including first-degree carjacking, first-degree kidnapping, and first-degree robbery, as well as four second-degree offenses.

The judge observed that in considering the consequences of a plea, "[p]reserving the client's right to remain in the United States may be more important to the client than any potential jail

sentence." The judge found, however, that "[g]iven the weight of the indictment and the generous negotiated plea agreement which included [the] dismissal of nine counts," the judge was not persuaded that defendant would not have pled, if his attorney had informed him the plea would result in his deportation.

The judge noted that defendant's kidnapping charge alone would have subjected him to a lengthy prison sentence, and under the plea agreement, defendant only received a five-year sentence with a NERA period of parole ineligibility. The judge observed that the State agreed to recommend the minimum sentence permitted by law for a second-degree offense. Defendant was, in fact, sentenced in accordance with the plea.

The judge also observed that the plea form informed defendant that he could seek individualized advice concerning the immigration consequences of his plea, and while defendant indicated on the plea form that he wanted to speak with an immigration attorney, there was no indication that he did so. Furthermore, defendant indicated that he was satisfied with the representation of his plea counsel.

The judge found that there was no reasonable probability that a fact-finder would have had reasonable doubt regarding defendant's guilt. In addition, the judge noted that defendant had not presented any evidence to support his claims that his attorney:

13

"cajoled" him into accepting the State's plea offer without informing him of the strengths and weaknesses of the State's case; failed to investigate the case; did not review the discovery with him; and failed to file pre-trial motions.

We are convinced there is sufficient credible evidence in the record to support the judge's findings of fact. We are also convinced the record supports the PCR court's legal determination that defendant failed to establish that he was denied the effective assistance of counsel with regard to his plea. The record supports the court's finding that defendant failed to establish both prongs of the Strickland test for ineffective assistance of counsel.

We note that the recent decision in Lee v. United States, 137 S. Ct. 1958 (2017), does not require a contrary result. In Lee, the defendant was charged with possession of ecstasy with intent to distribute in violation of federal law. Id. at 1963. Lee was not a United States citizen, but he was living in this country as a lawful permanent resident. Ibid. Lee's attorney told him that it was "very risky" to go to trial, and he would receive a lighter sentence if he pleaded guilty. Ibid.

Lee repeatedly asked his attorney if he would face deportation as a result of the criminal proceedings, and his attorney told him he would not be deported. Ibid. (citing Lee v. United States, 825 F.3d 311, 313 (6th Cir. 2016). Lee accepted the plea offer, and

14

the court sentenced him to a year and a day in prison. Ibid. Thereafter, Lee learned that he had pleaded guilty to an "aggravated felony" under the INA, which subjected him to deportation. Ibid. Lee filed a motion to vacate his conviction and sentence, alleging he was denied the effective assistance of counsel. Ibid.

The Court noted that the Government did not dispute that counsel had provided Lee with inadequate representation when he advised him that he would not be deported if he pleaded guilty. Id. at 1964. The Court determined, however, that Lee had adequately demonstrated a reasonable probability he would have rejected the plea if he had known his plea would result in his mandatory deportation. Id. at 1967.

The Court noted that there was "no question" that deportation was the determinative issue in whether Lee would accept the plea offer, as he had testified. Ibid. Moreover, Lee had asked his attorney repeatedly whether he faced the risk of deportation, and Lee and his attorney both had testified that he would have rejected the plea and gone to trial if Lee knew the deportation consequences of the plea. Id. at 1967—68.

In addition, at the plea hearing, the judge told Lee that a conviction could result in his deportation, and Lee stated that this would affect his decision on whether to plead guilty or not.

15

Id. at 1968. When asked by the judge how this affected his decision, Lee said he did not understand. Ibid. Lee pleaded guilty only after his attorney advised him the judge's statement was the "standard warning." Ibid.

The Court noted that Lee had lived in the United States for nearly thirty years, and he had established several businesses in this country. Ibid. He had strong connections to the United States, and there was no indication he had any ties to his native country, South Korea. Ibid. The Court held that under the circumstances, it was not irrational for Lee to reject the plea offer and proceed to trial. Ibid.

If Lee pleaded guilty, he would certainly be deported, whereas if he went to trial, deportation was almost a certainty. Ibid. The Court stated:

> If deportation were the "determinative issue" for an individual in plea discussions, as it was for Lee; if that individual had strong connections to this country and no other, as did Lee; and if the consequences of taking a chance at trial were not markedly harsher than pleading, as in this case, that "almost" could make all the difference. Balanced against holding on to some chance of avoiding deportation was a year or two more of prison time. . . . Not everyone in Lee's position would make the choice to reject the plea. But we cannot say it would be irrational to do so.
>
> [Id. at 1968-69.]

The facts in this case are substantially different from those in <u>Lee</u>. Here, defendant did not testify that deportation was a determinative issue on whether he would accept the State's plea offer, and neither defendant nor his attorney testified that he would have rejected the plea if he knew he faced mandatory deportation. There was no evidence that defendant had strong connections to this country, and few ties to his native land.

In addition, the potential consequences of taking a chance at trial were "markedly harsher" than entering the plea. As the PCR court found, defendant did not have a viable defense, and he faced a prison sentence substantially longer than the five years offered in the plea deal. The record here shows that it would not have been rational for defendant to reject the State's very favorable plea offer, proceed to trial, and run the risk of serving up to thirty years in jail.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION