UNITED STATES of America

v.

**Alejandro HERNANDEZ–ROJAS, Appellant.**

No. 10–1358.

United States Court of Appeals, Third Circuit.

Submitted Under Third Circuit LAR 34.1(a) March 10, 2011.

Filed: May 4, 2011.

Robert L. Eberhardt, Esq., Rebecca R. Haywood, Esq., Laura S. Irwin, Esq., Office of the United States Attorney, Pittsburgh, PA, for United States of America.

Renee Pietropaolo, Esq., Office of Federal Public Defender, Pittsburgh, PA, for Appellant.

Before: SCIRICA, AMBRO and VANASKIE, Circuit Judges.

## OPINION

VANASKIE, Circuit Judge.

Appellant Alejandro Hernandez–Rojas ("Hernandez–Rojas") appeals a sentence imposed on him following his guilty plea to a charge of reentry of a removed alien. Hernandez–Rojas claims that the District Court committed reversible error by treating a prior Pennsylvania involuntary manslaughter conviction as an enumerated crime of violence under U.S.S.G. § 2L1.2, and that his sentence was both procedurally and substantively unreasonable. Because we find that the District Court did not err, we will affirm.

### I.

As we write only for the parties, who are familiar with the facts and procedural history of this case, we will relate only those facts necessary to our analysis.

Hernandez–Rojas immigrated illegally from Mexico to the United States, settling in Pittsburgh, Pennsylvania. While living there, on April 14, 2001, he crashed his car on Interstate 79. When police arrived, they discovered that Hernandez–Rojas was in the driver's seat with five empty Budweiser beer bottles lying on the floor of the car. After a test revealed that he had a blood alcohol level of 0.202%, Hernandez–Rojas was released on bond.

On October 14, 2001, Hernandez–Rojas was again driving in the Pittsburgh area when he struck a car driven by Brian T. Tunney, causing injuries which resulted in Tunney's death. After the crash, Hernan-

dez–Rojas' blood alcohol level was determined to be 0.267%.

On August 28, 2002, Hernandez–Rojas entered a plea of guilty as to both automobile crashes. As to the first, he pleaded guilty to driving under the influence of alcohol and careless driving. As to the second, he pled guilty to homicide by vehicle caused by a violation of § 3731; homicide by vehicle; involuntary manslaughter; driving under the influence of alcohol; recklessly endangering another person; reckless driving; driving on the right side of the highway; and drivers required to be licensed. For these crimes, Hernandez–Rojas was sentenced to five to ten years in state custody for homicide by vehicle caused by a violation of § 3731, a concurrent term of two and a half to five years in state custody for homicide by vehicle, and a consecutive sentence of 48 hours to two years for driving under the influence of alcohol and careless driving.

Hernandez–Rojas was paroled on March 27, 2007, and was removed from the United States to Mexico on April 2, 2007. Nevertheless, in September, 2008, Hernandez–Rojas paid a smuggler and returned illegally to the United States, crossing the border near Laredo, Texas. He was discovered on January 16, 2009, when police stopped a car during a routine traffic violation in North Huntington, Pennsylvania. An individual in the car, also an illegal alien, informed the police that her two young children were at home. When police investigated, they discovered Hernandez–Rojas at the home. He initially identified himself as Angel Oreola, but admitted that he was an illegal immigrant. Fingerprint analysis soon confirmed his identity.

Hernandez–Rojas was indicted for reentry of a removed alien in violation of 8 U.S.C. § 1326. He entered a plea of guilty on April 9, 2009. A presentence investigation was ordered. The ensuing report calculated an advisory guidelines range of imprisonment of 15 to 21 months based upon a net offense level of 10 and a criminal history category of IV.

The Government objected to this calculation, arguing that instead of a four-level enhancement for deportation following a felony conviction, a sixteen-level enhancement should be applied because Hernandez–Rojas' prior conviction for involuntary manslaughter under 18 Pa.C.S. § 2504 qualified as a crime of violence under U.S.S.G. § 2L1.2(b)(1)(A)(ii). Hernandez objected to the applicability of § 2L1.2, arguing that his conviction for involuntary manslaughter was not a conviction for a crime of violence. The District Court, however, agreed with the Government's contention. The revised Guideline range was found to be 57 to 71 months' imprisonment. Hernandez–Rojas was sentenced to 71 months' imprisonment, followed by two years of supervised release.

## II.

The District Court had jurisdiction pursuant to 18 U.S.C. § 3231 and § 3583(e). We have jurisdiction under 28 U.S.C. § 1291 and 18 U.S.C. § 3742.

## A.

Hernandez–Rojas argues that the District Court committed reversible error by treating his Pennsylvania involuntary manslaughter conviction as an enumerated crime of violence of manslaughter under U.S.S.G. § 2L1.2. We exercise plenary review over the legal question of whether an offense qualifies as a crime of violence. *United States v. Stinson,* 592 F.3d 460, 462 n. 2 (3d Cir.2010). We also review *de novo* a sentencing court's interpretation of the Sentencing Guidelines. *United States v. Pojilenko,* 416 F.3d 243, 246 (3d Cir.2005).

The Guideline provision in question states:

If the defendant previously was deported, or unlawfully remained in the United States, after—(A) a conviction for a felony that is . . . (ii) a crime of violence; . . . increase by 16 levels[.]

U.S.S.G. § 2L1.2(b)(1)(A)(ii). A crime of violence is defined as:

Any of the following offenses under federal, state, or local law: . . . manslaughter . . . or any other offense under federal, state, or local law that has as an element the use, attempted use, or threatened use of physical force against the person of another.

U.S.S.G. § 2L1.2 app n. 1(B)(iii). Hernandez–Rojas argues that his conviction for involuntary manslaughter fails to meet the "generic definition" of manslaughter required for enumeration as a crime of violence. (Appellant's Br. at 15.)

This court has previously determined that the two sections of Application Note 1 to U.S.S.G. § 2L1.2 are disjunctive. That is, a crime may be considered a "crime of violence" if it is enumerated as such in the note or involves the "use, attempted use, or threatened use of physical force against the person of another." *See United States v. Remoi*, 404 F.3d 789, 794 n. 2 (3d Cir. 2005) ("The logical reading of the 'crime of violence' definition in section 2L1.2 compels us to believe that the two subparts represent different ways of defining 'crime of violence.' ") *Cf. United States v. Munguia–Sanchez*, 365 F.3d 877, 880–81 (10th Cir.2004); *United States v. Vargas–Garnica*, 332 F.3d 471, 473–74 (7th Cir.2003); *United States v. Pereira–Salmeron*, 337 F.3d 1148, 1151–53 (9th Cir.2003); *United States v. Fuentes–Rivera*, 323 F.3d 869, 872 (11th Cir.2003); *United States v. Rayo–Valdez*, 302 F.3d 314, 319–20 (5th Cir.2002); *United States v. GomezHernandez*, 300 F.3d 974, 978–79 (8th Cir.2002) (all coming to same conclusion). This case calls upon us to determine whether involuntary manslaughter as that crime is defined under Pennsylvania law qualifies as the specifically enumerated crime of manslaughter set forth in U.S.S.G. § 2L1.2.

The crime of manslaughter, although specifically enumerated as a crime of violence, is not defined in the Sentencing Guidelines. *See United States v. Dominguez–Ochoa*, 386 F.3d 639, 643 (5th Cir. 2004). Accordingly, we must define the elements of manslaughter according to its "generic, contemporary meaning." *Taylor v. United States*, 495 U.S. 575, 598, 110 S.Ct. 2143, 109 L.Ed.2d 607 (1990). We must then determine whether *involuntary* manslaughter under Pennsylvania law is included within the generic, contemporary meaning of the crime of manslaughter. If Pennsylvania's definition of involuntary manslaughter "substantially corresponds" to the generic definition of manslaughter, then the state conviction qualifies as an enumerated crime of violence for purposes of the 16–level enhancement.

The "generic, contemporary meaning of an offense is the way the offense is defined by the criminal codes of most states." *Taylor*, 495 U.S. at 598, 110 S.Ct. 2143. Following a comprehensive survey of state statutory provisions, the court in *Dominguez–Ochoa* held that "generic, contemporary manslaughter (including involuntary manslaughter) requires a recklessness *mens rea*." 386 F.3d at 646. We concur with that court's conclusion.

■ The dispositive question, therefore, is whether Pennsylvania law requires a recklessness *mens rea* to sustain a conviction for involuntary manslaughter. The Pennsylvania involuntary manslaughter statute, under which Hernandez–Rojas was convicted, provides as follows:

A person is guilty of involuntary manslaughter when as a direct result of the doing of an unlawful act in a reckless or grossly negligent manner or the doing of a lawful act in a reckless or grossly negligent manner, he causes the death of another person.

18 Pa.C.S. § 2504(a). Notably, Pennsylvania courts have construed the terms "reckless" and "grossly negligent" as expressing an identical state of mind. *See Commonwealth v. Huggins*, 575 Pa. 395, 836 A.2d 862, 868 (2003) ("[T]his Court has construed the terms 'reckless' and 'grossly negligent' as defining the equivalent state of mind for purposes of the involuntary manslaughter provision.") Pennsylvania law defines recklessness by providing:

A person acts recklessly with respect to a material element of an offense when he consciously disregards a substantial and unjustifiable risk that the material element exists or will result from his conduct. The risk must be of such a nature and degree that, considering the nature and intent of the actor's conduct and the circumstances known to him, its disregard involves a gross deviation from the standard of conduct that a reasonable person would observe in the actor's situation.

18 Pa.C.S. § 302(b)(3). This recklessness standard comports with the *mens rea* required for generic, contemporary manslaughter.[1] *See, e.g., Smith v. State*, 739 P.2d 1306, 1308 (Alaska App.1987) ("A person may commit manslaughter by recklessly causing the death of another person."); *State v. Walton*, 133 Ariz. 282, 650 P.2d 1264, 1272 (Ariz.App.1982) (finding recklessness necessary for manslaughter). *See also United States v. Gomez–Leon*, 545 F.3d 777, 791 (9th Cir.2008) (acknowledging that "it is the general trend for involuntary manslaughter to require the *mens rea* element of recklessness");

The Pennsylvania requirement of a *mens rea* of recklessness or gross negligence for involuntary manslaughter is thus in harmony with the law of most states concerning this *mens rea* required for manslaughter.[2] Accordingly, the District

---

1. Hernandez–Rojas argues that the *mens rea* of "mere recklessness" that is required for an involuntary manslaughter conviction in Pennsylvania cannot be equated with the "conscious disregard of a perceived homicidal risk" that is required for a generic manslaughter conviction. The cases which he cites, however, are inapposite. *Commonwealth v. O'Hanlon*, 539 Pa. 478, 653 A.2d 616 (1995), dealt with aggravated assault and found that "mere recklessness is insufficient to support a conviction for aggravated assault." *Id.* at 618. In *Commonwealth v. Comer*, 552 Pa. 527, 716 A.2d 593 (1998), the court found that the statutory definition of recklessness required an individual to "consciously disregard[ ] a substantial and unjustifiable risk that the material element exists or will result from his conduct." *Id.* at 597. Significantly, this degree of recklessness, while *less than* that required for an aggravated assault conviction, was *sufficient* to convict a person of involuntary manslaughter under Pennsylvania law. *Id.* Most importantly, this

definition of recklessness comports with that espoused by most states, which is the test for determining that Pennsylvania involuntary manslaughter is the equivalent of the Guidelines' enumeration of manslaughter as a crime of violence.

2. Hernandez–Rojas urges us to rely on the Model Penal Code, which provides, in relevant part, that manslaughter involves homicide "committed recklessly[ ] or . . . under the influence of extreme mental or emotional disturbance for which there is reasonable explanation or excuse." Model Penal Code § 210.3. We do not rely exclusively on the Model Penal Code, however, to determine whether an offense constitutes a crime of violence. *See United States v. Soto–Sanchez*, 623 F.3d 317, 322 (6th Cir.2010) (finding that under *Taylor* "the way the offense is defined by the criminal code of most states" takes precedence over the MPC definition). In any event, because the MPC definition of manslaughter also incorporates recklessness, it

Court correctly determined that Pennsylvania involuntary manslaughter constitutes a crime of violence for the purposes of the Sentencing Guidelines, and did not err when it added the 16–level enhancement on this basis.

## B.

Next, we address Hernandez–Rojas' argument that his sentence is procedurally and substantively unreasonable. We review the reasonableness of a District Court's sentence for abuse of discretion. *See United States v. Tomko*, 562 F.3d 558, 567 (3d Cir.2009). "Our appellate review proceeds in two stages." *Id.* at 567. First, we ensure " 'that the district court committed no significant procedural error, such as failing to calculate (or improperly calculating) the Guidelines range, treating the Guidelines as mandatory, failing to consider the § 3553(a) factors, selecting a sentence based on clearly erroneous facts, or failing to adequately explain the chosen sentence-including an explanation for any deviation from the Guidelines range.' " *Id.* (quoting *Gall v. United States*, 552 U.S. 38, 51, 128 S.Ct. 586, 169 L.Ed.2d 445 (2007)). If the district court's procedure is satisfactory, we move to stage two, considering the substantive reasonableness of the sentence. *Id.* (citing *United States v. Levinson*, 543 F.3d 190, 195 (3d Cir.2008)). The substantive review mandates that we consider the totality of the circumstances, rather than one or two factors. *Id.* "We afford deference to the District Court be-

cause it is in the best position to determine the appropriate sentence in light of the particular circumstances of the case." *United States v. Dragon*, 471 F.3d 501, 506 (3d Cir.2006) (quotation and citation omitted).

Hernandez–Rojas first argues that, because he challenged the validity of the Guidelines themselves as applied to his case on the ground that they were not "the product of an analysis of empirical data in sentencing,"[3] the District Court was obligated to respond with justifications for imposing a sentence within the Guideline range. (Appellant's Br. at 21.) Effectively, Hernandez–Rojas argues that the District Court inappropriately applied a presumption of reasonableness to the Guideline range.

Contrary to his argument, however, the District Court carefully considered his challenge before ultimately dismissing it. The Court stated that it "disagree[d]" with Hernandez–Rojas' argument that an 18–month sentence would be sufficient, but not greater than necessary, to achieve the purposes of sentencing. It also recounted Hernandez–Rojas' criminal history and the applicable Guideline range. In response to Hernandez–Rojas' argument concerning the impropriety of double counting, the District Court correctly noted that the use of the prior conviction to calculate Hernandez–Rojas' criminal history category and his sentence enhancement was justified un-

comports with the *mens rea* for involuntary manslaughter in Pennsylvania.

3. Apparently, Hernandez–Rojas' objections to the validity of the Guideline in light of the § 3553(a) factors is based upon his personal belief that he merely "committed a non-violent entry without authorization of a United States Official to secure medical treatment and to improve his economic circumstances." (Appellant's Br. at 19.) He quotes a Universi-

ty of Chicago Law Review article for his policy argument that "a person who, without force, disobeys a law she had no voice in making so that she can work hard at low wages to provide subsistence for herself and her family hardly seems culpable." (*Id.* at 20.) As to the accident, he argues "extreme remorse," calling the DUI fatality "an accident that I am very sorry for, and will continue to be sorry for." (*Id.* at 22.)

der *United States v. Lopez–Reyes*, 589 F.3d 667 (3d Cir.2009).

Most importantly, the District Court acknowledged Hernandez–Rojas' other arguments by stating, "[a]lthough the Court acknowledges that pursuant to [*Kimbrough v. United States*, 552 U.S. 85, 128 S.Ct. 558, 169 L.Ed.2d 481 (2007) ], it has the authority to vary from the guidelines based on policy considerations[,][i]t does not believe that policy consideration warrants a variance in this case." (A. 88.) Such a "brief explanation," when it is clearly responsive to the defendant's objection, is sufficient to demonstrate that the District Court adequately considered the sentence in light of the § 3553(a) factors. *See Rita v. United States*, 551 U.S. 338, 357, 127 S.Ct. 2456, 168 L.Ed.2d 203 (2007). In light of these facts, we find that the District Court sufficiently explained its chosen sentence. There was thus no procedural error.

Next, we turn to the substantive reasonableness of Hernandez–Rojas' sentence. Hernandez–Rojas argues that his sentence is substantively unreasonable because his 16–level enhancement was based entirely on his criminal history, did not consider the nature of his underlying crime or his illegal re-entry, and also failed to reflect a weighing of the § 3553(a) factors. To find a sentence substantively unreasonable, we must find that "no reasonable sentencing court would have imposed the same sentence on that particular defendant for the reasons the district court provided." *United States v. Tomko*, 562 F.3d 558, 568 (3d Cir.2009).

█ As has been shown above, the District Court gave ample consideration to Hernandez–Rojas' objection; that it did not ultimately decide in his favor does not render his sentence unreasonable. *See United States v. Lessner*, 498 F.3d 185, 204 (3d Cir.2007). Because we cannot say that

"no reasonable sentencing court would have imposed the same sentence on [Hernandez–Rojas] for the reasons the district court provided[,]" *Tomko*, 562 F.3d at 568, Hernandez–Rojas has failed to show that his sentence is substantively unreasonable.

### III.

For the foregoing reasons, we will affirm the District Court's judgment.