# United States Court of Appeals
## For the Eighth Circuit

_____

No. 11-2971
_____

United States of America,

*Plaintiff - Appellee,*

v.

Sarah Ann Godsey, also known as Sarah Marcum,

*Defendant - Appellant.*
_____

Appeal from United States District Court
for the Northern District of Iowa - Cedar Rapids
_____

Submitted: March 15, 2012
Filed: September 5, 2012
_____

Before WOLLMAN and COLLOTON, Circuit Judges, and HICKEY,[1] District Judge.
_____

HICKEY, District Judge.

Sarah Ann Godsey pleaded guilty to one count each of bank fraud, access-device fraud, and aggravated identity theft under 18 U.S.C. §§ 1344; 1029(a)(5); and

---

[1]The Honorable Susan O. Hickey, United States District Judge for the Western District of Arkansas, sitting by designation.

1028A(a)(1), respectively. The district court[2] sentenced her to a total of 54 months' imprisonment. Godsey appeals her sentence. We affirm.

## I.

Godsey was a sales assistant at KBK Inc.'s ("KBK") Cedar Rapids, Iowa office from June 2005 through March 2007. Her duties included preparing checks for her supervisors' signatures. Over a 16-month period, Godsey embezzled money from KBK's checking account at US Bank by forging checks and making unauthorized electronic transfers. Godsey concealed the fraud by covering her withdrawals with funds transferred from other KBK credit card accounts. Godsey also opened several credit card accounts and increased KBK's credit limit to $120,000 by using her supervisor's name, birthdate, and social security number. She linked those credit cards to her personal online account with PayPal Inc. ("PayPal"). Godsey used the credit cards to make personal purchases and to pay off her US Bank embezzlement. She further concealed her fraud by mailing altered KBK bank statements to KBK's New York office.

When KBK and local police discovered the scheme in early 2007, Godsey provided false explanations and forged PayPal documents to hinder the investigation. Godsey also gave false statements to an FBI agent working on the case. A grand jury indicted her on 33 counts of bank fraud, mail fraud, access-device fraud, and aggravated identity theft. Pursuant to a plea agreement, Godsey pleaded guilty to one count of bank fraud, one count of access device fraud, and one count of aggravated identity theft. At sentencing, the district court imposed a two offense level increase under § 3B1.3 of the United States Sentencing Guidelines for abusing a position of trust and denied Godsey's request for an adjustment downward under § 3E1.1 for

---

[2]The Honorable Linda R. Reade, Chief Judge, United States District Court for the Northern District of Iowa.

acceptance of responsibility. The district court found the total offense level on the two fraud counts to be level 19, criminal history category I, with an advisory guideline range of 30 to 37 months. On the aggravated identity theft count, the district court calculated the guideline range as 24 months pursuant to 18 U.S.C. § 1028A, which mandates a sentence of two years to run consecutive with other terms of imprisonment. The district court denied Godsey's motion to vary below the guideline range under 18 U.S.C. § 3553(a) and imposed a total sentence of 54 months–two concurrent 30 month sentences for the fraud counts and a consecutive 24 month sentence for aggravated identity theft. The district court further imposed a 5-year term of supervised release, a $300 special assessment, and restitution in the amount of $120,189.22.

## II.

Godsey appeals three aspects of her sentence. First, she contends that the district court erred by applying to her sentence a two offense level increase for abusing a position of trust under U.S.S.G. § 3B1.3. Second, Godsey contends that the district court erred by denying her an adjustment downward for acceptance of responsibility under U.S.S.G. § 3E.1.1. Finally, Godsey contends that the district court erred by denying her a downward variance in light of her family obligations, alleged mental illness, and lack of criminal history under 18 U.S.C. § 3553(a).

## A.

Godsey first argues that the district court erred in applying to her sentence an upward adjustment for abusing a position of trust. U.S.S.G. § 3B1.3 (2011). Improperly calculating the guideline range is a significant procedural error. *United States v. Hagen*, 641 F.3d 268, 270 (8th Cir. 2011). "We review the district court's construction and application of the guidelines *de novo* and its factual findings for clear error." *United States v. Bates*, 548 F.3d 1105, 1108 (8th Cir. 2009).

1.

Section 3B1.3 of the guidelines provides for a two offense level increase "[i]f the defendant abused a position of public or private trust, or used a special skill, in a manner that significantly facilitated the commission or concealment of the offense[.]" U.S.S.G. § 3B1.3. Application Note 1 of that section defines "public or private trust" as:

1. Definition of "Public or Private Trust".—"Public or private trust" refers to a position of public or private trust characterized by professional or managerial discretion (i.e., substantial discretionary judgment that is ordinarily given considerable deference). Persons holding such positions ordinarily are subject to significantly less supervision than employees whose responsibilities are primarily non-discretionary in nature. For this adjustment to apply, the position of public or private trust must have contributed in some significant way to facilitating the commission or concealment of the offense (e.g. by making the detection of the offense or the defendant's responsibility for the offense more difficult).

U.S.S.G. § 3B1.3 Application Note 1.

Godsey argues that the district court erroneously applied Application Note 2(B) of § 3B1.3. Application Note 2(B) states in relevant part:

2. Application of Adjustment in Certain Circumstances.–Notwithstanding Application Note 1, or any other provision of this guideline, an adjustment under this guideline shall apply to the following . . .

(B) A defendant who exceeds or abuses the authority of his or her position in order to obtain, transfer, or issue unlawfully, or use without authority, any means of identification.

U.S.S.G. § 3B1.3 Application Note 2(B).

The district court applied § 3B1.3 on the basis that Godsey abused the authority of her position in order to use without authority her supervisor's means of identification. Godsey argues that because the district court did not first establish whether she occupied a "position of public or private trust" under Application Note 1, it should never have reached Application Note 2(B). In response, the government contends that Application Note 2(B) may be applied independently of Application Note 1 because Application Note 2 clearly states that it applies "[n]otwithstanding Application Note 1…."

Godsey's argument requires us to interpret the guidelines. "'We employ basic rules of statutory construction when interpreting the Guidelines.'" *United States v. Davis*, 668 F.3d 576, 577 (8th Cir. 2012) (quoting *United States v. Hackman*, 630 F.3d 1078, 1083 (8th Cir. 2011)). Unless an Application Note is clearly erroneous or in conflict with the Constitution, a federal statute, or the guideline itself, the note is binding on a district court. *Hackman*, 630 F.3d at 1083 (quoting *United States v. Smith*, 282 F.3d 1045, 1047 (8th Cir. 2002)). Godsey does not argue that the Application Note in question suffers any such deficiency. "'We therefore turn to the ordinary meaning of the terms to guide our review'" of the Application Note at issue. *Id.* (quoting *United States v. Parker*, 267 F.3d 839, 847 (8th Cir. 2001)).

Generally, under U.S.S.G. § 3B1.3 the government must prove (1) that the defendant was in a position of public or private trust; and (2) that he used the position to significantly facilitate the commission or concealment of the offense. *United States v. Miell*, 661 F.3d 995, 998 (8th Cir. 2011). We now face the question of whether Application Note 2(B) provides an independent basis for applying an adjustment under § 3B1.3. We hold that is does.

The Note's own terms sever it from other § 3B1.3 requirements. Application Note 2 states that "[n]otwithstanding Application Note 1 or any other provision of this guideline, an adjustment under this guideline shall apply to the following[.]"

"Notwithstanding" means "in spite of." *Notwithstanding*, Black's Law Dictionary 1091 (7th ed. 1999). Application Note 2(B), therefore, applies in spite of Note 1. A failure to meet the definition of Application Note 1 does not affect whether Application Note 2(B) applies.

The plain language of Application Note 2(B) thus compels the conclusion that it applies even when Application Note 1 does not. Accordingly, we find that Application Note 2(B) is an independent basis for applying an adjustment under § 3B1.3. *See United States v. Abdelshafi*, 592 F.3d 602, 611 (4th Cir. 2010).

2.

Godsey next argues that she is not covered by the language in Application Note 2(B). She asserts that all of the example applications given in Application Note 2(B) involve identity theft that victimizes individuals outside the defendant's place of employment. Because Godsey's identity theft victimized only her supervisor, she argues that Application Note 2(B) does not apply to her. The government argues that the Note's application should not be limited by its stated examples.

Note 2(B) provides the following example applications:

(i) An employee of a state motor vehicle department who exceeds or abuses the authority of his or her position by knowingly issuing a driver's license based on false, incomplete, or misleading information; (ii) a hospital orderly who exceeds or abuses the authority of his or her position by obtaining or misusing patient identification information from a patient chart; and (iii) a volunteer at a charitable organization who exceeds or abuses the authority of his or her position by obtaining or misusing identification information from a donor's file.

U.S.S.G. § 3B1.3 Application Note 2(B).

The first victim mentioned in the examples is presumably the public. The second victim is a patient, and the third is a charitable donor. While none of the stated examples involve the employment relationship in Godsey's case, the express rule of Application Note 2(B) does not discuss victims. To meet the Note's definition, a defendant need only to have "exceed[ed] or abuse[d] the authority of his or her position" in order to unlawfully use any means of identification. *Id.* The act of using identification is what is pertinent–not who is victimized. We are reluctant to conclude that the Sentencing Commission intended Application Note 2(B)'s examples to add an element not present in the plain language of the Note. For these reasons, we find that Application Note 2(B) is not limited by its stated examples and that Godsey's actions fall within the field of offenses contemplated by the Note.

## B.

Godsey next argues that the district court erred by denying her an adjustment under § 3E1.1 for acceptance of responsibility. We review the district court's interpretation of the guidelines *de novo* and its factual findings underlying a denial of an acceptance of responsibility adjustment for clear error. *United States v. King*, 559 F.3d 810, 814 (8th Cir. 2009).

The district court imposed on Godsey an upward adjustment for obstruction of justice, which "ordinarily indicates that the defendant has not accepted responsibility for his criminal conduct." U.S.S.G. § 3E.1.1 Application Note 4. "There may, however, be extraordinary cases in which adjustments under . . . [§] 3E1.1 may apply." *Id*. Having received an adjustment for obstruction of justice, Godsey must therefore show that it was clear error for the district court not to find her case "extraordinary."

"Not every defendant can present an extraordinary case deserving of acceptance of responsibility merely by pleading guilty and ceasing to obstruct justice." *United*

*States v. Honken*, 184 F.3d 961, 972 (8th Cir. 1999). A guilty plea and an absence of post-plea obstructive conduct cannot alone make an extraordinary case. *Id.* We have described the analysis for determining whether an acceptance of responsibility adjustment is appropriate in the presence of an obstruction adjustment:

> [T]he district court should consider the timing and nature of the defendant's obstructive conduct, the degree of his acceptance of responsibility, whether his obstruction of justice was an isolated and early incident, whether he voluntarily terminated his obstructive conduct, whether he admitted and recanted his obstructive conduct, and whether he assisted in the investigation of his and others' offenses.
>
> *United States v. Stoltenberg*, 309 F.3d 499, 500 (8th Cir. 2002) (citation omitted).

While Godsey pleaded guilty, accepted responsibility, and showed remorse for her actions, her obstruction was significant. She provided false documents and statements to investigators and to KBK early in the investigation. Moreover, she again lied to investigators in March 2009, nearly two years after first submitting the false documents and statements. Thus, based on the record, we cannot conclude that the district court clearly erred by denying Godsey an acceptance of responsibility adjustment.

C.

Godsey last argues that the district court misapplied the 18 U.S.C. § 3553(a) factors by denying her a downward variance in light of her family obligations, alleged mental illness, and lack of criminal history. Godsey argues that denying the variance rendered her sentence unreasonable.

"We review the substantive reasonableness of a sentence under a deferential abuse-of-discretion standard." *United States v. Morais*, 670 F.3d 889, 893 (8th Cir. 2012) (citing *Gall v. United States*, 552 U.S. 38, 41, 128 S. Ct. 586 (2007)). "[W]e presume that a sentence imposed within the advisory guideline range is substantively reasonable." *Id.* (citing *United States v. Ruelas–Mendez*, 556 F.3d 655, 657 (8th Cir. 2009)). A district court is entitled to substantial discretion in weighing § 3553(a) factors. *Id.* A mechanical recitation of factors at sentencing is not required. *United States v. Diaz–Pellegaud*, 666 F.3d 492, 504 (8th Cir. 2012). Rather, "it simply must be clear from the record that the district court actually considered the § 3553(a) factors in determining the sentence." *Id.* (quoting *United States v. Walking Eagle*, 553 F.3d 654, 659 (8th Cir. 2009) (citation omitted)).

The district court stated that it determined Godsey's sentence "after carefully considering all the arguments made for variance, both written and oral, and the objection thereto voiced by the United States…." The sentencing hearing transcript reveals the district court's careful consideration of each of the grounds on which Godsey sought a downward variance. Specifically, the district court noted that Godsey's daughter's health was improving, that Godsey's mental health was only a situational depressive disorder, and that her crimes' long time span and her obstruction of justice both mitigated against varying below the guideline range. We find that the district court did not abuse its discretion in denying Godsey a downward variance.

## III.

The judgment of the district court is affirmed.

_____