# United States Court of Appeals

### For the Eighth Circuit

_____

No. 13-3179

_____

United States of America

*Plaintiff - Appellee*

v.

Jose Malagon-Soto

*Defendant - Appellant*

_____

Appeal from United States District Court
for the Western District of Missouri - Springfield

_____

Submitted: April 18, 2014
Filed: August 22, 2014

_____

Before RILEY, Chief Judge, BENTON and KELLY, Circuit Judges.

_____

KELLY, Circuit Judge.

Jose Malagon-Soto pled guilty to illegal reentry by a previously removed alien, under 8 U.S.C. § 1326(a) and (b)(1). At sentencing, the district court determined that Malagon-Soto qualified for a 16-level enhancement in his offense level pursuant to United States Sentencing Guidelines Manual (USSG) § 2L1.2(b)(1)(A)(ii), due to a prior conviction for second degree manslaughter in Kentucky. After applying the

enhancement, the district court[1] calculated a guideline range of 41–51 months and sentenced him to 36 months in prison. Malagon-Soto appeals his sentence and, more specifically, the application of § 2L1.2(b)(1)(A)(ii) in determining his guidelines range. Having jurisdiction under 28 U.S.C. § 1291, we affirm.

## I. Background

On August 24, 1999, Malagon-Soto was convicted of second degree manslaughter in Kentucky, after killing another driver in a head-on collision while driving under the influence of alcohol. After serving his sentence, Malagon-Soto was deported to Mexico in April 2008. In January 2013, Malagon-Soto pled guilty to illegally reentering the United States. At sentencing, Malagon-Soto objected to the sentencing guideline calculation in his Presentence Investigation Report (PSR), which included a 16-level enhancement pursuant to USSG § 2L1.2(b)(1)(A)(ii), due to his 1999 conviction for manslaughter. The district court overruled his objection, applied the enhancement, and determined his sentencing range to be 41–51 months. The district court then granted a downward variance, sentencing Malagon-Soto to 36 months in prison. Malagon-Soto appeals the applicability of the enhancement.

## II. Discussion

Malagon-Soto argues that the district court erred in applying the 16-level enhancement because his 1999 manslaughter conviction does not qualify as a "crime of violence" under the sentencing guidelines. "Improperly calculating a guideline range is a significant procedural error." United States v. Godsey, 690 F.3d 906, 909 (8th Cir. 2012) (citation omitted). "We review the district court's construction and

---

[1]The Honorable Beth Phillips, United States District Judge for the Western District of Missouri.

application of the guidelines *de novo* and its factual findings for clear error." Id. (quotation omitted).

Sentencing Guideline § 2L1.2(b)(1)(A)(ii) allows for a 16-level enhancement if the defendant has a prior conviction for a crime of violence. The guidelines define "crime of violence" as:

> [A]ny of the following offenses under federal, state, or local law: Murder, manslaughter, kidnapping, aggravated assault, forcible sex offenses (including where consent to the conduct is not given or is not legally valid, such as where consent to the conduct is involuntary, incompetent, or coerced), statutory rape, sexual abuse of a minor, robbery, arson, extortion, extortionate extension of credit, burglary of a dwelling, or any other offense under federal, state, or local law that has as an element the use, attempted use, or threatened use of physical force against the person of another.

USSG § 2L1.2 cmt. n.1(B)(iii). Thus, there are two categories of crimes of violence under this provision: (1) the enumerated offenses, and (2) those meeting the catchall provision for "any other offense under federal, state, or local law that has as an element the use, attempted use, or threatened use of physical force against the person of another." Id.

"This court employs a categorical approach to determine whether a prior offense qualifies as [an enumerated offense] under the guidelines." United States v. Medina-Valencia, 538 F.3d 831, 833 (8th Cir. 2008); see also Shepard v. United States, 544 U.S. 13 (2005); Taylor v. United States, 495 U.S. 575 (1990). We look "to the 'statutory definition of the prior offense,' not the underlying facts of the crime, to determine whether the statute proscribes the generic elements of [the offense]." Medina-Valencia, 538 F.3d at 833 (quoting Taylor, 544 U.S. at 602). In applying the categorical approach, we have not yet had occasion to determine the elements of the generic federal offense of manslaughter; however, we have said that the generic

federal offense of manslaughter requires at least a mens rea of recklessness. United States v. Roblero-Ramirez, 716 F.3d 1122, 1126–27 (8th Cir. 2013).

On appeal, Malagon-Soto does not dispute that he committed an enumerated crime—manslaughter. He also does not attempt to discuss the categorical approach or argue the elements of his manslaughter conviction fail to meet the elements of the generic federal offense of manslaughter. He did not raise such arguments in the district court either. In fact, Malagon-Soto concedes in his brief on appeal "that manslaughter is a 'listed' prior conviction and would seem to require a mechanical application of" USSG § 2L1.2 cmt. n.1(B)(ii). Instead, Malagon-Soto argues that even the enumerated offenses in § 2L1.2 must include a "use of force" element, an element that necessarily requires the intent to use force against another person. Thus, he asserts, the 16-level enhancement does not apply because his 1999 manslaughter conviction did not include as an element the "use of force."

To support his argument, Malagon-Soto points to Leocal v. Aschcroft, 543 U.S. 1 (2004), and United States v. Torres-Villalobos, 487 F.3d 607 (8th Cir. 2007), which interpreted the phrase "crime of violence" as defined in 18 U.S.C. § 16. In Leocal, the Court determined that a "crime of violence," under § 16,[2] required "the use of physical force against the person or property of another (or the risk of having to use such force in committing a crime) . . . ." Leocal, 543 U.S. at 11. The intent necessary to use force against another (e.g., the act of pushing) is distinguishable from the mere application of force (e.g., stumbling or falling into another), and thus the use of force required for a crime of violence, under § 16, includes some level of intent to use force against another that is greater than mere negligence and more specific than "the possibility that harm will result from a person's conduct . . . ." Id. 543 U.S. at 10.

_____

[2]Leocal was specifically interpreting the meaning of an "aggravated felony" in 8 U.S.C. § 1101(a)(43), which includes "a crime of violence . . . as defined in section 16 of Title 18 . . . ." See Leocal, 543 U.S. at 5.

-4-

In Torres-Villalobos, we considered whether the crime of second degree manslaughter, as defined in Minnesota, fit the § 16 definition of use of force as interpreted by Leocal.  In doing so, we found a difference between the intent required to constitute a use of force and the intent required for the underlying crime.  We held that "second-degree manslaughter [does not] involve a risk that the perpetrator will intentionally use physical force in the course of committing the offense." Torres-Villalobos, 487 F.3d at 616–17.  "A perpetrator's knowing disregard of a serious risk of injury, as required by the Minnesota manslaughter statute, is different from a robber or burglar ignoring the risk that he may resort to the intentional use of force in committing the offense."  Id. at 617.  Thus, we distinguished between the intent required to commit the crime of manslaughter—recklessness—and the more specific intent required for that crime to involve a "use of force."

Malagon-Soto argues that it would be inconsistent to hold that a crime of violence as defined in 18 U.S.C. § 16 requires a "use of force" while holding that a crime of violence under USSG § 2L1.2(b)(1)(A)(ii) does not.  He suggests the meaning of a crime of violence should be consistent across these applications and that the "tenor of . . . § 2L1.2(b)(1)(A)[(ii)] is that a 'crime of violence' is an offense that involves the active or attempted intentional use or employment of physical force in the accomplishment of the offense (the same standard that forms the basis of *Leocal* and *Torres-Villalobos*)."  Thus, Malagon-Soto argues that to harmonize the definitions and the caselaw, we should read into the enumerated crimes in § 2L1.2(b)(1)(A)(ii) a requirement of use of force with its attendant (and more specific) mens rea.

This argument is foreclosed by our precedent.  In United States v. Paz, 622 F.3d 890 (8th Cir. 2010), this court addressed whether a use of force was required for the enumerated offenses in § 2L1.2(b)(1)(A)(ii).  We specifically held that: "[E]numerated offenses are always classified as 'crimes of violence,' regardless of whether the prior offense expressly has an element the use, attempted use, or

threatened use of physical force against the person of another." Paz, 622 F.3d at 892 (citing USSG app. C, amendment 658 (2003)). "Because enumerated offenses are crimes of violence regardless of whether force was used, the catch-all definition of a 'crime of violence' in the commentary to U.S.S.G. § 2L1.2 is irrelevant." Id. Thus, even if we might agree in principle that the definition of "crime of violence" in 18 U.S.C. § 16, as interpreted in Leocal to require a use of force, is inconsistent with another definition of a "crime of violence" in § 2L1.2, any such inconsistency is not a problem of interpretation but rather one of drafting. Consequently, the district court did not err in applying the 16-level enhancement.

### III. Conclusion

For the reasons stated above, the district court is affirmed.

_____