# United States Court of Appeals

### For the Eighth Circuit

_____

No. 14-3072

_____

United States of America

*Plaintiff - Appellee*

v.

Dominic Kosmes, also known as Joe Remikio

*Defendant - Appellant*

_____

Appeal from United States District Court
for the Western District of Arkansas - Fayetteville

_____

Submitted: March 9, 2015
Filed: July 8, 2015

_____

Before MURPHY, MELLOY, and SHEPHERD, Circuit Judges.

_____

MELLOY, Circuit Judge.

Dominic Kosmes, a citizen of the Federated States of Micronesia, pleaded guilty to reentering the United States illegally in violation of 8 U.S.C. § 1326(a). At sentencing, the district court imposed a sixteen-level enhancement under United States Sentencing Guideline § 2L1.2(b)(1)(A)(ii) because Kosmes previously pleaded

guilty to a crime of violence. Because the district court[1] correctly concluded Kosmes previously was convicted of a crime of violence, we affirm.

I

On July 9, 1997, Kosmes pleaded guilty to manslaughter in violation of 9 Guam Code Ann. § 16.50(a)(1) in the United States territory of Guam. He was sentenced to ten years' imprisonment. After his release, Kosmes was deported to the Federated States of Micronesia.

In February 2014, Homeland Security discovered Kosmes in Arkansas. He was arrested for illegally reentering the United States after deportation in violation of 8 U.S.C. § 1326(a). In March 2014, a grand jury issued a single-count indictment against Kosmes. He eventually entered a guilty plea, which the district court accepted in August 2014.

Before sentencing, Kosmes filed five objections to the presentence investigation report (PSR). Only one objection, however, needed to be resolved by the district court at the sentencing hearing.[2] Kosmes argued that the Eighth Circuit "has left open the question of what mental state attaches to generic manslaughter for purposes of determining whether it should qualify as a crime of violence under U.S.S.G. § 2L1.2(b)(1)(A)(ii)." And, according to Kosmes, because his manslaughter conviction in Guam required only a reckless mental state, rather than an intentional one, the PSR's sixteen-level enhancement for the manslaughter conviction was improper. At the sentencing hearing, Kosmes articulated the fighting issues: "First, is reckless[ness] the appropriate mental state for generic manslaughter; and if that is

_____

[1] The Honorable Timothy L. Brooks, United States District Judge for the Western District of Arkansas.

[2] The other objections were either resolved by the probation office or had no impact on the sentencing hearing.

so, is reckless manslaughter a crime of violence that would trigger the 16-level increase."

After the district court noted the "precise issue" has not been resolved by the Eighth Circuit, it held that the manslaughter conviction with a reckless mental state qualified as a crime of violence under U.S.S.G. § 2L1.2(b)(1)(A)(ii). The district court concluded that, "relying heavily upon the Eighth Circuit's opinion in [United States v. Roblero-Ramirez, 716 F.3d 1122 (8th Cir. 2013)] and in particular its collection of cases from other circuit courts of appeal, the [district court] is persuaded that a reckless mens rea—or I should say a recklessness mens rea in the context of a criminal homicide case—is sufficient to establish a crime of violence under Section 2L1.2." After applying a sixteen-level enhancement for the manslaughter conviction, the district court calculated an advisory guidelines range of 46 to 57 months.[3] The district court found that the advisory range was significantly greater than necessary; as a result the court imposed a sentence of 30 months' imprisonment. Kosmes timely appeals.

II

We review the district court's application and interpretation of the Federal Sentencing Guidelines de novo and its factual findings for clear error. United States v. Malagon-Soto, 764 F.3d 925, 927 (8th Cir. 2014).

Section 2L1.2(b)(1) permits a sentencing court to increase a defendant's offense level by sixteen levels "[i]f the defendant previously was deported, or unlawfully

---

[3] Kosmes argued that the manslaughter conviction should have qualified as a four-level enhancement instead of a sixteen-level enhancement. If the district court would have accepted Kosmes's argument, according to Kosmes, the advisory guidelines range should have been 10 to 16 months (offense level 10, criminal history category III).

remained in the United States, after . . . (A) a conviction for a felony that is . . . (ii) a crime of violence." Application note 1.(B)(iii) to § 2L1.2(b)(1) states that a manslaughter conviction "under federal, state, or local law" is considered a "crime of violence." This case calls upon us to determine whether Kosmes's manslaughter conviction as defined under Guam law qualifies as the enumerated crime of manslaughter under U.S.S.G. § 2L1.2.

To determine whether manslaughter constitutes a crime of violence under the Guidelines, we apply the categorical approach. See United States v. Medina-Valencia, 538 F.3d 831, 833 (8th Cir. 2008). When applying the categorical approach, "we look not to the facts of the particular prior case, but instead to whether the state statute defining the crime of conviction categorically fits within the generic federal definition of a corresponding crime of violence." United States v. Roblero-Ramirez, 716 F.3d 1122, 1125 (8th Cir. 2013) (citation and internal quotation marks omitted). Therefore, "a state offense is a categorical match with a generic federal offense only if a conviction of the state offense 'necessarily' involved . . . facts equating to [the] generic [federal offense]." Moncrieffe v. Holder, 133 S. Ct. 1678, 1684 (2013) (alterations in original) (quoting Shepard v. United States, 544 U.S. 13, 24 (2005) (plurality opinion)). "By 'generic' federal definition of a crime of violence, we mean the 'sense in which the term is now used in the criminal codes of most States.'" Roblero-Ramirez, 716 F.3d at 1125 (quoting Taylor v. United States, 495 U.S. 575, 598 (1990)).[4]

---

[4] We acknowledge the Supreme Court's recent decision in Johnson v. United States, No. 13-7120, 2015 WL 2473450, at *5 (U.S. June 26, 2015), where the Supreme Court found the residual clause of the Armed Career Criminal Act, 18 U.S.C. § 924(e)(2)(B), unconstitutionally vague. This case involves an enumerated offense under the Federal Sentencing Guidelines and, therefore, we have no occasion to decide what applicability, if any, the Court's decision in Johnson has upon similar residual-clause language in the Federal Sentencing Guidelines. We do note, however, that the Court in Johnson specifically reaffirmed the use of the categorical approach for enumerated offenses. Johnson, 2015 WL 2473450, at *9.

Kosmes argues generic federal manslaughter requires intentional, not reckless, conduct. The Guam manslaughter statute to which Kosmes pleaded guilty requires only reckless conduct, so Kosmes argues his prior manslaughter conviction does not qualify as a crime of violence. The government disagrees that generic federal manslaughter requires intentional conduct; it argues recklessness is sufficient. Therefore, according to the government, Kosmes's manslaughter conviction qualifies as a crime of violence under § 2L1.2(b)(1)(A)(ii).

This case calls upon us to answer two questions. First, what is the generic federal definition of manslaughter. Specifically, what mens rea is required for generic federal manslaughter. Second, does Kosmes's manslaughter conviction, without looking at the facts underlying his conviction, fit within the generic federal definition. Regarding the first question, the Eighth Circuit has come close to determining the mental state required for generic federal manslaughter. Although we have said generic federal manslaughter requires a mental state of at least recklessness, we have left open the question of whether anything more (e.g., intentional conduct) is required. Malagon-Soto, 764 F.3d at 927 ("In applying the categorical approach, we have not yet had occasion to determine the elements of the generic federal offense of manslaughter; however, we have said that the generic federal offense of manslaughter requires at least a mens rea of recklessness.")[5]; Roblero-Ramirez, 716 F.3d at 1126 ("We need not decide at this time whether generic manslaughter requires purposeful or intentional behavior . . . or mere recklessness." (internal citation and quotation marks omitted)).

Other circuits, however, have decided the requisite mens rea for generic federal manslaughter. United States v. Armijo, 651 F.3d 1226, 1236 (10th Cir. 2011)

[5] At first blush, Malagon-Soto appears to resolve this issue. However, Malagon-Soto stated merely recklessness was the lowest possible mens rea; it did not hold recklessness would necessarily satisfy the mens rea for generic federal manslaughter.

(finding generic federal manslaughter requires "purposeful or intentional" conduct); United States v. Hernandez-Rojas, 426 F. App'x 67, 70 (3d Cir. 2011) (holding generic federal manslaughter requires a recklessness mental state); United States v. Peterson, 629 F.3d 432, 436–37 (4th Cir. 2011) (finding the mens rea required for generic federal manslaughter is reckless or intentional conduct); United States v. Dominguez-Ochoa, 386 F.3d 639, 646 (5th Cir. 2004) (deciding generic federal manslaughter requires a recklessness mens rea).

In Peterson, the Fourth Circuit found that a review of manslaughter offenses from various states' codes, "yield[ed] material variations." 629 F.3d at 436. As a result, the Fourth Circuit concluded "as did the Supreme Court in Taylor, that the Model Penal Code provides the best generic, contemporary, and modern definition, particularly because it has been widely adopted." Id. (citing Taylor, 495 U.S. at 598 n.8). The Fourth Circuit then noted the Model Penal Code defines manslaughter as homicide (a) that is committed recklessly or (b) that would be murder except for the fact that it was committed under the influence of extreme mental or emotional disturbance for which there is reasonable explanation or excuse. Id. (citing Model Penal Code § 210.3). And "[i]n turn, [the Model Penal Code] defines recklessness to mean a 'conscious[] disregard [] of a substantial and unjustifiable risk that the material element will result from [the] conduct.'" Id. (citing Model Penal Code § 2.02(c)).

In Armijo, the Tenth Circuit reached the opposite result, finding only versions of manslaughter that require intentional or purposeful conduct qualify as crimes of violence. 651 F.3d at 1236. The Tenth Circuit noted that offenses found to be crimes of violence generally involve purposeful, violent, and aggressive conduct. Such conduct was not present in the underlying involuntary manslaughter offense at issue. Id. at 1234–35. The Tenth Circuit went on to note, "it is simply untenable to read manslaughter as set out in application note 1 . . . as encompassing those versions of

the crime with a mens rea of recklessness, when this court has unequivocally held that . . . § 4B1.2 only reaches purposeful or intentional behavior." Id. at 1236.

We find the Fourth Circuit's reliance on Taylor and the Model Penal Code persuasive. The Supreme Court's decision in Taylor directs us to define generic federal manslaughter by the "sense in which the term is now used in the criminal codes of most States." 495 U.S. at 598. We agree with the Fourth Circuit that the Model Penal Code has been "widely adopted," Peterson, 629 F.3d at 436, and provides the best definition. See also United States v. Gomez-Leon, 545 F.3d 777, 791 (9th Cir. 2008) (finding "the modern view appears to be that recklessness is an element of contemporary manslaughter"). In finding that the Model Penal Code provides the best generic federal definition, we hold that "manslaughter" as enumerated in the Guidelines means a criminal homicide that is committed (a) recklessly or (b) intentionally if committed under the influence of extreme mental or emotional disturbance for which there is a reasonable explanation or excuse.

We also note that our decision today does not depart from any of our prior decisions. In Armijo, the Tenth Circuit apparently relied on our decision in United States v. Ossana, 638 F.3d 895 (8th Cir. 2011), to support its holding. Armijo, 651 F.3d at 1236. The Tenth Circuit stated Ossana held "that crimes listed in application note 1 . . . must be intentional or purposeful to qualify as crimes of violence." Id. In Ossana, however, we qualified and limited our holding to "crimes . . . which encompass[] the unadorned offense of reckless driving resulting in injury." Ossana, 638 F.3d at 901 n.6. We did not say in Ossana that crimes with a reckless mens rea categorically do not qualify as crimes of violence under the Guidelines. Id. In finding recklessness satisfies the mens rea for generic federal manslaughter, we respectfully disagree with the Tenth Circuit's holding in Armijo.[6]

_____

[6] We note that the Tenth Circuit has questioned its holding in Armijo. See United States v. Duran, 696 F.3d 1089, 1093 n.1 (10th Cir. 2012) ("[I]t is possible

We now turn to the second inquiry: whether Kosmes's manslaughter conviction fits within the generic federal definition of manslaughter. Kosmes's admits "it is undisputed that the pertinent portion of the Guam statute provided that criminal homicide constitutes manslaughter when it is committed recklessly." He further admits "the wording of the 1997 manslaughter statute [to which Kosmes pleaded guilty to] is identical to the Model Penal Code § 210.3 manslaughter definition." As a result, Kosmes's manslaughter conviction qualifies as a crime of violence under U.S.S.G. § 2L1.2(b)(1)(A)(ii).

III

The judgment of the district court is affirmed.

_____

---

that at least some crimes with a recklessness element might be crimes of violence. But Armijo seems to foreclose this inquiry in our circuit.").