# United States Court of Appeals

### For the Eighth Circuit

_____

No. 16-3886

_____

United States of America

*Plaintiff - Appellee*

v.

Randall Tyrell Steward, also known as Randall Stewart, also known as Trouble

*Defendant - Appellant*

_____

Appeal from United States District Court
for the Western District of Arkansas - Fayetteville

_____

Submitted: September 18, 2017
Filed: January 25, 2018

_____

Before COLLOTON, BENTON, and KELLY, Circuit Judges.

_____

KELLY, Circuit Judge.

Randall Steward pleaded guilty to sex trafficking of a child in violation of 18 U.S.C. § 1591. At sentencing, Steward objected to various aspects of the presentence report. The district court[1] sustained some objections, but overruled Steward's

---

[1]The Honorable Timothy L. Brooks, United States District Judge for the Western District of Arkansas.

objection to the categorization of his prior conviction for Oklahoma voluntary manslaughter, see Okla. Stat. tit. 21, § 711(2),[2] as a crime of violence. Using the United States Sentencing Guidelines (USSG) in effect at the time of sentencing, the district court found Steward qualified as a career offender under USSG § 4B1.1. The advisory Guidelines range was 151–188 months, and the district court sentenced Steward to 151 months of imprisonment. Steward appeals, arguing that his prior voluntary manslaughter conviction is not a crime of violence.

"We review de novo a district court's interpretation and application of the guidelines." United States v. Rice, 813 F.3d 704, 705 (8th Cir. 2016). Generally, district courts should apply the Guidelines "that are 'in effect on the date the defendant is sentenced.'" Peugh v. United States, 569 U.S. 530, 537–38 (2013) (quoting 18 U.S.C. § 3553(a)(4)(A)(ii)). However, when the Guidelines have been amended since the offense occurred such that application of the new Guidelines

---

[2]The Oklahoma statute does not label the various types of first-degree manslaughter defined in § 711. However, it is clear from the statute that each subsection describes a separate offense with distinct, non-overlapping elements. Cf. Mathis v. United States, 136 S. Ct. 2243, 2248 (2016) (describing a statutory provision that "define[s] a single crime"). The relevant definition in this case—contained in § 711(2)—"is similar to" the federal offense of voluntary manslaughter, defined in 18 U.S.C. § 1112. See In re Okla. Unif. Jury Inst. for Juvenile Cases, 116 P.3d 119, 148 (Mem) (Okla. 2005); Campbell v. State, 636 P.2d 352, 357 n.1 (Okla. Crim. App. 1981) ("The distinction between murder and voluntary manslaughter is found in the dividing line between malicious action on the one hand and action in the heat of passion on the other . . . ."); Morgan v. State, 536 P.2d 952, 954, 959 (Okla. Crim. App. 1975) (describing voluntary manslaughter), overruled on other grounds by Walton v. State, 744 P.2d 977 (Okla. Crim. App. 1987); see also Brown v. State, 777 P.2d 1355, 1357 (Okla. Crim. App. 1989) (referring to "heat of passion first degree manslaughter"). Likewise, § 711(1) describes "misdemeanor manslaughter," State v. Ceasar, 237 P.3d 792, 794 (Okla. Crim. App. 2010), and § 711(3) describes "manslaughter by resisting criminal attempt," Davis v. State, 268 P.3d 86, 116 (Okla. Crim. App. 2011).

results in a higher sentencing range, the court should apply the Guidelines in effect at the time of the offense, so as not to violate the *Ex Post Facto* Clause. Id. at 538. Here, the definition of crime of violence in USSG § 4B1.2 was amended between the time Steward committed his offense and the time of his sentencing. As a result, we must examine both the 2015 and 2016 versions of the Guidelines. If Steward's prior offense would qualify as a crime of violence under both versions, there can be no *Ex Post Facto* Clause violation and we must affirm.

In 2015, the definition of crime of violence in the Guidelines included the same "residual clause" as did the definition of violent felony in the Armed Career Criminal Act (ACCA): "an offense that 'involves conduct that presents a serious potential risk of physical injury to another.'" Beckles v. United States, 137 S. Ct. 886, 890 (2017) (quoting USSG § 4B1.2(a)(2) (Nov. 2006)). After the Supreme Court held the residual clause to be unconstitutionally vague in the context of the ACCA, see Johnson v. United States, 135 S. Ct. 2551, 2557 (2015), the Sentencing Commission amended the Guidelines, removing the residual clause and adding more enumerated offenses. See USSG Supp. App. C, Amend. 798 (effective August 1, 2016). Subsequently, however, in Beckles, the Court held that the Guidelines are not subject to vagueness challenges, thereby confirming the validity of the residual clause under the pre-2016 Guidelines. 137 S. Ct. at 890.

We are persuaded that Oklahoma voluntary manslaughter qualifies as a "crime of violence" under the 2015 Guidelines. Although the district court determined "without doubt" that the offense satisfied § 4B1.2(a)(1)—the "force clause"—we need not make a force-clause determination because we conclude that Oklahoma voluntary manslaughter qualifies as a crime of violence under the residual clause. Under the 2015 Guidelines, the residual clause was accompanied by commentary that contained illustrative examples of offenses that met its "serious potential risk of physical injury to another" test. Manslaughter was one of the offenses contained in that list. See USSG § 4B1.2, cmt., n.1 (Nov. 2015) ("'Crime of violence' includes . . .

manslaughter . . . ."). The Supreme Court has explained that "commentary in the Guidelines Manual that interprets or explains a guideline is authoritative unless it violates the Constitution or a federal statute, or is inconsistent with, or a plainly erroneous reading of, that guideline." Stinson v. United States, 508 U.S. 36, 38 (1993). Thus, under the 2015 Guidelines, manslaughter is effectively an enumerated offense. See United States v. Kosmes, 792 F.3d 973, 975 (8th Cir. 2015) (relying on the commentary to USSG § 2L1.2(b)(1) to determine that manslaughter was an enumerated offense); cf. Beckles, 137 S. Ct. at 897 (Ginsburg, J., concurring in the judgment) (explaining that Beckles's as-applied challenge should fail because his prior conviction was "expressly designated" as a crime of violence by the official commentary).

Therefore, we follow the categorical approach, looking to see "whether the state statute defining" voluntary manslaughter "categorically fits within the generic federal definition of a corresponding crime of violence." Kosmes, 792 F.3d at 975 (quoting United States v. Roblero-Ramirez, 716 F.3d 1122, 1125 (8th Cir. 2013)). "[A] state offense is a categorical match with a generic federal offense only if a conviction of the state offense necessarily involved facts equating to the generic federal offense." Id. (quoting Moncrieffe v. Holder, 569 U.S. 184, 190 (2013)) (cleaned up).[3] "By 'generic' federal definition of [voluntary manslaughter], we mean the 'sense in which the term is now used in the criminal codes of most States.'" Id. at 976 (quoting Roblero-Ramirez, 716 F.3d at 1125)).

---

[3] "Cleaned up" is a new parenthetical used to eliminate unnecessary explanation of non-substantive prior alterations. See Jack Metzler, Cleaning Up Quotations, J. App. Prac. & Process (forthcoming 2018), http://dx.doi.org/10.2139/ssrn.2935374. This parenthetical can be used when extraneous, residual, non-substantive information has been removed, in this case, internal quotation marks, brackets, additional quoting parentheticals and an ellipsis. See also United States v. Reyes, 866 F.3d 316, 321 (5th Cir. 2017).

Oklahoma's criminal code defines the offense of manslaughter through the intersection of three statutory provisions. First, homicide is defined as "the killing of one human being by another." Okla. Stat. tit. 21, § 691(A). Homicide is then divided into four mutually-exclusive categories: murder, manslaughter, excusable homicide, or justifiable homicide. Id. § 692. Each of those categories is subsequently defined, and voluntary manslaughter—a further subset of manslaughter—is defined as "[h]omicide . . . perpetrated without a design to effect death, and in a heat of passion, but in a cruel and unusual manner, or by means of a dangerous weapon."[4] Id. § 711(2). Thus, we must determine whether this compound definition of voluntary manslaughter fits within the "generic federal definition" of manslaughter. See Kosmes, 792 F.3d at 975.

In Kosmes, we turned to the Model Penal Code for persuasive evidence of what constituted "generic federal manslaughter," because "the Model Penal Code provides the best generic, contemporary, and modern definition, [and] has been widely adopted." Id. at 977 (quoting United States v. Peterson, 629 F.3d 432, 436 (4th Cir. 2011)). We did so because the crime with which we were concerned, Guam involuntary (or reckless) manslaughter, tracked the Model Penal Code exactly. Compare 9 Guam Code Ann. § 16.50a)(1) ("Criminal homicide constitutes manslaughter when . . . it is committed recklessly . . . .") with Model Penal Code § 210.3(1)(a) (same). However, Kosmes addressed an issue not relevant to this appeal, as the defendant there raised a then-undecided question about whether a manslaughter statute that only required a mens rea of recklessness could qualify as a crime of violence. 792 F.3d at 976–78.

---

[4]Because they only serve to narrow the scope of the offense, both of the listed alternatives—"in a cruel and unusual manner" and "by means of a dangerous weapon"—do not need to be analyzed under Mathis, 136 S. Ct. at 2251 (contrasting "elements" and "means").

Steward's case, on the other hand, presents a different question. This is because—unlike involuntary manslaughter, which most often occurs when the defendant lacks the requisite mental state to commit homicide, see Wayne R. LaFave, Substantive Criminal Law § 15.4(a) (discussing the lesser mens rea required to commit involuntary manslaughter)—voluntary manslaughter functions more like a partial defense to murder, describing conduct undertaken intentionally but in the "heat of passion." See LaFave § 15.2(a) n.7 & accompanying text (citing, inter alia, Okla. Stat. tit. 21, § 711); see also Davis, 268 P.3d at 111 (describing manslaughter as a "defense"). While the majority of states continue to follow this common law definition, see LaFave § 15.2(a), the Model Penal Code has modernized the language, referring to "a homicide which would otherwise be murder [that] is committed under the influence of extreme mental or emotional disturbance . . . ." Model Penal Code § 210.3(1)(b). For our purposes, this linguistic update, from "heat of passion" to "extreme mental or emotional disturbance," makes no difference. Having examined Oklahoma case law, we discern nothing in the state's application and analysis of the voluntary manslaughter statute that demonstrates it departs in any meaningful way from the "generic federal definition,"[5] and Steward provides none. We further note, by way of confirmation, that Oklahoma's statute is almost identical to the federal

---

[5] Oklahoma's statute does contain the additional requirement that the defendant have acted "without a design to effect death." Okla. Stat. tit. 21, § 711(2). However, our review of the case law indicates that that language has been interpreted to further emphasize the necessary level of "passion" for this quasi-defense to apply—in other words, to downgrade the offense from murder—rather than as a separate or additional element. See Davis, 286 P.3d at 111 ("The heat of passion must render the mind incapable of forming a design to effect death before the defense of manslaughter is established.") (citing Allen v. State, 821 P.2d 371, 374 (Okla. Crim. App. 1991)); Eizember v. State, 164 P.3d 208, 236 (Okla. Crim. App. 2007) ("The 'passion' necessary to support a manslaughter instruction must be so great as to 'render the mind incapable of forming a design to effect death.'" (quoting Charm v. State, 924 P.2d 754, 760 (Okla. Crim. App. 1996))); see also Bryson v. Ward, 187 F.3d 1193, 1208 (10th Cir. 1999) (citing Charm, 924 P.2d at 760 for the same proposition).

-6-

crime of "voluntary manslaughter." See 18 U.S.C. § 1112(a) ("Manslaughter is the unlawful killing of a human being without malice . . . . [u]pon a sudden quarrel or heat of passion."); see also Okla. Unif. Jury Inst., 116 P.3d at 148.

Oklahoma manslaughter also qualifies as a crime of violence under the 2016 Guidelines—which, as of August 1, 2016, made voluntary manslaughter an explicitly enumerated offense. USSG § 4B1.2(a)(2) (Aug. 2016). We have already determined that Oklahoma voluntary manslaughter satisfies the "generic federal definition" of manslaughter. Thus, because Oklahoma voluntary manslaughter qualifies as a crime of violence under both versions of the Guidelines, there is no *Ex Post Facto* Clause issue as to Steward's sentence, and he was properly sentenced as a career offender.

The judgment of the district court is affirmed.

_____