# IN THE COURT OF APPEALS OF IOWA

No. 18-0891
Filed July 18, 2018

**IN THE INTEREST OF S.B.,**
**Minor Child,**

**M.B., Mother,**
        Appellant.

_____

Appeal from the Iowa District Court for Linn County, Susan F. Flaherty, Associate Juvenile Judge.

A mother appeals the termination of her parental rights. **AFFIRMED.**

Kristin L. Denniger, Cedar Rapids, for appellant mother.

Thomas J. Miller, Attorney General, and John B. McCormally, Assistant Attorney General, for appellee State.

Angela M. Railsback of Railsback Law Office, Cedar Rapids, guardian ad litem for minor child.

Considered by Vogel, P.J., and Doyle and Bower, JJ.

**DOYLE, Judge.**

M.B. appeals the termination of her parental rights to her child S.B., born in February 2017.[1] She challenges the grounds for termination found by the juvenile court, and she contends termination of her parental rights is not in the child's best interests. Upon our review, we affirm.

### I. Standard of Review and Statutory Framework.

Parental rights may be terminated under Iowa Code chapter 232 (2017) if the following three conditions are true: (1) a "ground for termination under section 232.116(1) has been established" by clear and convincing evidence, (2) "the best-interest framework as laid out in section 232.116(2) supports the termination of parental rights," and (3) none of the "exceptions in section 232.116(3) apply to preclude termination of parental rights."[2] *In re A.S.*, 906 N.W.2d 467, 472-73 (Iowa 2018). Our review is de novo, which means we give the juvenile court's findings of fact weight, especially the court's credibility assessments, but we are not bound by those findings. *See id.* at 472. "For evidence to be 'clear and convincing,' it is merely necessary that there be no serious or substantial doubt about the correctness of the conclusion drawn from it." *Raim v. Stancel*, 339 N.W.2d 621, 624 (Iowa Ct. App. 1983); *see also In re M.W.*, 876 N.W.2d 212, 219 (Iowa 2016).

---

[1] The parental rights of the child's father, S.F., were also terminated at that time, and he does not appeal. We note that both the mother and the father have other children from previous relationships, and although the mother's and the father's parental rights with respect to those children are not at issue here, circumstances involving the father's other children are relevant to this case. We will identify those children as such when referring to them, but we note our reference to "the mother" refers only to M.B.

[2] Because the mother does not challenge the juvenile court's determination that none of the exceptions in section 232.116(3) apply to preclude termination of her parental rights, we need not discuss that consideration. *See In re P.L.*, 778 N.W.2d 33, 40 (Iowa 2010).

## II. Discussion.

### A. Grounds for Termination.

The juvenile court found the State proved the grounds for termination set forth in Iowa Code section 232.116(1) paragraphs (h) and (*l*), which the mother contests on appeal. When the juvenile court finds more than one ground for termination under section 232.116(1), "we may affirm . . . on any ground we find supported by the record." *In re A.B.*, 815 N.W.2d 764, 774 (Iowa 2012). We focus our analysis on paragraph (h).

With regard to section 232.116(1)(h), the mother challenges the sufficiency of the evidence supporting the fourth element of the paragraph—that the child could not be returned to her custody at the time of the termination hearing. *See* Iowa Code § 232.116(1)(h)(4) ("There is clear and convincing evidence that the child cannot be returned to the custody of the child's parents as provided in section 232.102 at the present time."). To satisfy its burden of proof, the State must establish "[t]he child cannot be protected from some harm which would justify the adjudication of the child as a child in need of assistance." *Id.* § 232.102(5)(a)(2); *accord In re A.M.S.*, 419 N.W.2d 723, 725 (Iowa 1988). "At the present time" refers to the time of the termination hearing. *See In re A.M.*, 843 N.W.2d 100, 111 (Iowa 2014). The mother argues the State failed to prove that element, explaining she "indicated at trial that her wish for the case was to have [the child] returned to her care *and to continue to address* the [Iowa Department of Human Services's (Department)] concerns by attending a residential treatment center designed for mothers with children." (Emphasis added.)

The mother admitted the child could not be returned to her care at the time of the hearing. At the hearing, she was asked, "Would you agree that you are not in any position to have custody of your daughter returned to you today?" She responded, "Returned to me today, no." The mother admitted she had not met all of the Department's requirements needed to be completed before the child's custody could be returned to her. Given the circumstances, we believe this is sufficient evidence for the establishment of element four of section 232.116(1)(h). *See In re Z.G.*, No. 16-2187, 2017 WL 1086227, at *4 n.5 (Iowa Ct. App. Mar. 22, 2017) (collecting cases in which termination of parental rights was affirmed because a parent admitted the child or children could not be returned to the parent's care at the time of the termination hearing).

In any event, there is scant evidence in the record showing the mother made any real attempts to address the Department's concerns during the pendency of the case. The child tested positive for illegal substances at birth, so the mother knew from the start that addressing substance abuse was critical to reunification with the child. At the termination-of-parental-rights hearing on December 1, 2017, the mother admitted she had used methamphetamine in August 2017, but she maintained no other usage since the birth of S.B. Yet, she had not submitted to any drug testing since April 2017, and she gave implausible excuses for her failure to follow through with the tests as directed by the juvenile court. She admitted she had no valid reason for not drug testing from April 2017 to the time of the hearing, even though she was aware it was crucial she show the court that she was clean and sober in order to have any hope of the return of her child or even unsupervised time with the child. The mother also claimed she was attending one-on-one

substance abuse treatment sessions with a counselor, but the Department's caseworker learned she had been discharged from that treatment in November 2017 after missing numerous appointments. She and the father lived together, but she maintained she was not aware of whether the father was using illegal substances. The mother trivialized the fact that police had been called to her and the father's residence numerous times during the year. Ultimately, the mother did not evidence any dedication to tackling her substance abuse issue at the December 2017 hearing.

Then, a week after that hearing, the child's guardian ad litem (GAL) requested the juvenile court reopen the record because the GAL had "been presented with new and critically important information that ha[d] significant bearing on the court's determination of the issues before it in this case." The court granted the GAL's request, and a continuation of the termination-of-parental-rights hearing was held January 10, 2018. Evidence presented that day showed police had responded to a call concerning injuries to the father's three-year-old child on November 26, 2017, just days before the other hearing. The responding officer learned the father's three children had a visit with the father at the father and the mother's residence. The three-year-old child returned from the visit covered in bruises, and the father and the mother gave conflicting and inconsistent stories as to how the three-year-old child was injured while in their care. Neither the father's nor the mother's story accounted for all of the injuries and bruises the three-year-old child sustained, and the three-year-old child's evaluating doctor concluded the injuries had been inflicted rather than occurring accidentally. Additionally, two of the father's three children tested positive for methamphetamine at high levels

following the visit. The mother claimed that, while doing construction in the home, one of the walls had been opened up, and there had been methamphetamine in the walls and in the vents. The Department's social worker did not find that plausible and opined that to have tested positive at such high levels, the children would have had to, somehow, ingested the methamphetamine. The social worker believed the father and the mother had actively used methamphetamine in the presence of those children.

Given the mother's failure to provide drug tests, coupled with her inaccurate reporting of her participation in the substance-abuse treatment program and her improbable claims of how the father's children were exposed to high levels of methamphetamine while in her and the father's home, the mother's "enthusiasm . . . and pledge[] to follow the treatment recommendations" now is simply not credible. There is no question the child could not be returned to the mother's care at the time of the termination-of-parental-rights hearing. Consequently, we find clear and convincing evidence that grounds for termination of the mother's parental rights were established under section 232.116(1)(h).

### *B. Best Interests.*

The mother also argues termination of her parental rights was not in the child's best interests, pointing out that she and the child share a strong bond. That bond cannot overcome the child's need for permanency when the mother has not put her child's needs first and made a real effort to achieve sobriety.

Time "is a critical element" in termination proceedings, *see in re C.B.*, 611 N.W.2d 489, 495 (Iowa 2000), and parents have a limited time frame, based upon the child's age, to demonstrate their ability to be parents. *See A.S.*, 906 N.W.2d

at 474. For children aged three and under, the legislature has determined that time frame is six months. *See* Iowa Code § 232.116(1)(h)(3); *A.S.*, 906 N.W.2d at 473-74. After the statutory time period for termination has passed, termination is viewed with a sense of urgency. *See C.B.*, 611 N.W.2d at 495. "Importantly, . . . it is well-settled law that we cannot deprive a child of permanency after the State has proved a ground for termination under section 232.116(1) by hoping someday a parent will learn to be a parent and be able to provide a stable home for the child." *A.S.*, 906 N.W.2d at 474 (cleaned up).[3] Children are not equipped with pause buttons; delaying permanency in favor of the parents is not in a child's best interests. *See In re A.C.*, 415 N.W.2d 609, 614 (Iowa 1987) ("The crucial days of childhood cannot be suspended while parents experiment with ways to face up to their own problems.").

Here, the mother did not take responsibility for her failure to submit to drug testing. She was less than candid in her testimony describing her efforts and involvement in substance abuse treatment. She did not honestly explain how the father's three-year-old child was seriously injured while at her and the father's residence. She also related an implausible story to explain why the father's children were exposed to methamphetamine while at her and the father's residence. Her actions or lack thereof in these instances and others demonstrate the mother's unwillingness to attend to the issues that led to the Department's

---

[3] "Cleaned up" is a new parenthetical used to indicate that internal quotation marks, alterations, and citations have been omitted from quotations. *See United States v. Steward*, 880 F.3d 983, 986 n.3 (8th Cir. 2018); Jack Metzler, *Cleaning Up Quotations*, 18 J. App. Prac. & Process 143 (Fall 2017).

involvement, as well as her inability to put the child's needs before her own to ensure the child's safety and wellbeing.

The child is doing well in foster care, and the child is adoptable. Considering "the child's safety," "the best placement for furthering the long-term nurturing and growth of the child," and "the physical, mental, and emotional condition and needs of the child," *P.L.*, 778 N.W.2d at 37, we agree with the juvenile court that termination of the mother's parental rights is in the child's best interests.

### C. Relative Placement, Additional Time, and Guardianship.

Finally, we note that in her argument contesting the grounds for termination, the mother also alternatively requests to have the child "placed in the care of a relative . . . and that a concurrent goal of permanent guardianship be explored while allowing [the mother] additional time to complete her treatment and get [the child] safely home." Before the court can grant a parent additional time, there must be an assurance that the need for removal will no longer exist at the end of that time period. *See* Iowa Code § 232.104(2)(b). Considering the mother's lack of progress in treatment, as well as the other reasons stated above, there can be no assurance that the need for removal would no longer exist following an extended time period. Consequently, insofar as the mother seeks additional time for reunification, we find the evidence insufficient to warrant an extension of time.

### III. Conclusion.

Because we find clear and convincing evidence that grounds for termination of the mother's parental rights were established under section 232.116(1)(h), termination of the mother's parental rights is in the child's best interests, and an

extension of time for reunification is not supported under the facts of the case, we affirm the juvenile court's order terminating the mother's parental rights.

**AFFIRMED.**