# IN THE COURT OF APPEALS OF IOWA

No. 18-0851
Filed September 12, 2018

**IN THE INTEREST OF C.V. and J.V.,**
**Minor Children,**

**J.N., Father,**
      Appellant,

**V.V., Mother,**
      Appellant.
_____

Appeal from the Iowa District Court for Dallas County, Virginia Cobb, District

Associate Judge.


A mother and father separately appeal the termination of parental rights.

**AFFIRMED ON BOTH APPEALS.**


David Barajas of Macro & Kozlowski, LLP, West Des Moines, for appellant

father.

Gina E. Verdoorn of Carr Law Firm, PLC, Des Moines, for appellant mother.

Thomas J. Miller, Attorney General, and Meredith L. Lamberti, Assistant

Attorney General, for appellee State.

Kayla Stratton of Juvenile Public Defenders Office, Des Moines, guardian

ad litem for minor children.

Considered by Vaitheswaran, P.J., and Doyle and Mullins, JJ.

**DOYLE, Judge.**

V.V. is the mother and J.N. is the father of J.V., born in 2015, and C.V., born in 2016. Following a trial, the juvenile court terminated the parents' parental rights, and each parent now appeals the court's order. Upon our de novo review of the record, we affirm.

### I. *Standard of Review and Statutory Framework*.

Parental rights may be terminated under Iowa Code chapter 232 (2017) if the following three conditions are true: (1) a "ground for termination under section 232.116(1) has been established" by clear and convincing evidence, (2) "the best-interest framework as laid out in section 232.116(2) supports the termination of parental rights," and (3) none of the "exceptions in section 232.116(3) apply to preclude termination of parental rights." *In re A.S.*, 906 N.W.2d 467, 472-73 (Iowa 2018). Our review is de novo, which means we give the juvenile court's findings of fact weight, especially the court's credibility assessments, but we are not bound by those findings. *See id.* at 472. "For evidence to be 'clear and convincing,' it is merely necessary that there be no serious or substantial doubt about the correctness of the conclusion drawn from it." *Raim v. Stancel*, 339 N.W.2d 621, 624 (Iowa Ct. App. 1983); *see also In re M.W.*, 876 N.W.2d 212, 219 (Iowa 2016).

### II. *Discussion*.

On appeal, the mother asserts the State failed to prove the grounds for termination found by the juvenile court. Both parents argue termination of parental rights was not in the children's best interests and maintain the court should have granted each additional time to achieve reunification. The father contends the

State failed to make reasonable efforts for reunification with the children. For the following reasons, we disagree.

### A. *Grounds for Termination.*

The juvenile court found the State proved the grounds for termination set forth in Iowa Code section 232.116(1) paragraphs (d) and (h), which the mother contests on appeal. When the juvenile court finds more than one ground for termination under section 232.116(1), "we may affirm . . . on any ground we find supported by the record." *In re A.B.*, 815 N.W.2d 764, 774 (Iowa 2012). We focus our analysis on paragraph (h).

Here, the mother argues the State "did not offer clear and convincing evidence that the children could not be returned to [her care if an] additional six months were given to the mother to reunify with the mother." However, paragraph (h) requires the State prove, among other things, the child could not be returned to the parent's care "at the present time." *See* Iowa Code § 232.116(1)(h)(1)-(4); *see also A.S.*, 906 N.W.2d at 473 (discussing paragraph (h)). "At the present time" means at the time of the termination-of-parental-rights hearing. *See In re A.M.*, 843 N.W.2d 100, 111 (Iowa 2014). Upon our de novo review of the record, we find clear and convincing evidence the children could not be returned to the mother's care at the time of the termination-of-parental-rights hearing.

In December 2017, the children's pediatrician, who had been overseeing the children's medical care since September 2016, opined that, in her medical opinion, the parents were "not equipped with the skills required to provide for the basic and medical needs of either [child]." The doctor explained that when she first evaluated the children, the youngest child suffered from "severe failure to

thrive, with social-emotional developmental delay," and the oldest child had a "global development delay." The youngest child's medical tests were negative for organic causes of failure to thrive, and the pediatrician opined the child's "failure to thrive was most consistent with inadequate daily caloric intake." However:

> [The] parents were resistant to the diagnosis of failure to thrive and medical recommendations for age appropriate feedings at initial visits. They failed to show insight into the medical concerns for [the youngest child's] failure to grow and the impact of inadequate nutrition on developmental progression. They often expressed distrust in the medical recommendations for [the child's] care. Upon placement in foster care, [the youngest child] showed consistent weight gain and developmental progression. With age appropriate intake, she consistently showed weight gain at each subsequent visit. At her 15 month well child examination, [the youngest child] showed mild weight loss thought to be secondary to refusal to drink whole milk. She started [a daily formula supplement] and recent follow up showed excellent weight gain. She has thrived since that time in both realms of growth and development.

Similarly, the doctor noted the oldest child's health progressed when she was placed in foster care, testifying, "Since placement in foster care and involvement with Early Access (AEA), [the oldest child] has showed continued age appropriate developmental progression. She has continued to show adequate growth."

The doctor stated that when the parents attended the children's appointments with her, along with the children's foster parents, "[t]he dynamics during the clinical visits ha[d] been difficult," noting:

> [The] father often contradicts the history provided by the foster family. He consistently reports findings different than those reported by the foster parents. He has expressed disagreement and distrust in medical recommendations from this provider as well as the ongoing care provided by the foster family. Both [parents] have failed to show insight into [the children's] medical diagnoses and developmental delays.

Finally, the doctor expressed "[a]dditional concerns of emotional abuse and detachment," reporting she had observed little "affection between the biological parents and [the children] during clinical appointments."

The Iowa Department of Human Services (DHS) caseworker and the service providers also testified the children could not be returned to the parents' care at the time of the hearing. Despite providing the parents extensive services, concerns for the safety of the children remained. Ultimately, the parents at times did not have accurate expectations of their children's behavior for the children's ages, and they did not appear to have parental capacity to be able to accurately report information. Having reviewed the record de novo, we agree with the juvenile court's assessment:

> [The parents] have not demonstrated any insight into what their issues are, despite having had them addressed by professionals, or any cause and effect between their demonstrated behavior and the impact there has been on the children. The court also does not believe [the mother] has the ability to manage the constant vigilance and need for immediate, almost instinctive, responses to a child's unknowing but dangerous actions, such as climbing and falling, getting burned on the stove, the list could go on and on. She also does not have developed critical thinking that provides for anticipating and planning the future, as the girls grow and change. [The father] doesn't have the same deficits [the mother] has, but he has demonstrated a lack of attention to the girls in his surroundings that the court has not seen addressed.

The record shows that the children could not be returned to the parents' care at the time of the termination-of-parental-rights hearing. Consequently, we find clear and convincing evidence that grounds for termination of the mother's parental rights were established under section 232.116(1)(h).

### B. Best Interests, Reasonable Efforts, and Additional Time.

The parents' remaining arguments are related; we therefore address them together. The mother argues termination of her parental rights was not in the child's best interests, pointing out that she and the children share a bond "strong enough the children light up when they saw their mother and responded to her voice and commands." Both parents assert the juvenile court should have granted them additional time for reunification. The father maintains the DHS failed to make reasonable efforts for reunification because it would not decrease the level of supervision during visitation. For the following reasons, we disagree with the parents.

"Time is a critical element" in proceedings concerning parental rights. *See In re C.B.*, 611 N.W.2d 489, 495 (Iowa 2000). When a child is removed from his or her parents' care, the parents have a limited time frame, based upon their child's age, to demonstrate the child can be safely returned to the parents' care. *See A.S.*, 906 N.W.2d at 474; *see also* Iowa Code §§ 102.102(6)(2)(b), 232.116(1)(h)(3). For children age three and under, the legislature has determined that time frame is six months. *See* Iowa Code § 232.116(1)(h)(3); *A.S.*, 906 N.W.2d at 473-74.

Iowa law requires the DHS to "make every reasonable effort to return the child to the child's home as quickly as possible consistent with the best interests of the child." Iowa Code § 232.102(7); *see also C.B.*, 611 N.W.2d at 493. "Visitation between a parent and child is an important ingredient to the goal of reunification," *In re M.B.*, 553 N.W.2d 343, 345 (Iowa Ct. App. 1996), and the reasonable-efforts requirement "includes visitation designed to facilitate

reunification while providing adequate protection for the child." *C.B.*, 611 N.W.2d at 493. "However, the nature and extent of visitation is always controlled by the best interests of the child." *M.B.*, 553 N.W.2d at 345.

After the statutory time period for termination has passed, termination is viewed with a sense of urgency. *See C.B.*, 611 N.W.2d at 495. Before the court can grant a parent additional time to work towards reunification, there must be an assurance that the need for removal will no longer exist at the end of that time period. *See* Iowa Code § 232.104(2)(b) (requiring the court, when granting additional time, to "enumerate the specific factors, conditions, or expected behavioral changes which comprise the basis for the determination that the need for removal of the child from the child's home will no longer exist at the end of the additional six-month period"). Children are not equipped with pause buttons, and a child cannot be deprived "of permanency after the State has proved a ground for termination under section 232.116(1) by hoping someday a parent will learn to be a parent and be able to provide a stable home for the child." *A.S.*, 906 N.W.2d at 474 (cleaned up).[1] Ultimately, in determining whether termination of parental rights is in a child's best interests, we "give primary consideration to the child's safety, to the best placement for furthering the long-term nurturing and growth of the child, and to the physical, mental, and emotional condition and needs of the child." Iowa Code § 232.116(2).

Here, there is no question that the parents love their children. Additionally,

---

[1] "Cleaned up" is a relatively new parenthetical used to indicate that internal quotation marks, alterations, and citations have been omitted from quotations for readability purposes. *See United States v. Steward*, 880 F.3d 983, 986 n.3 (8th Cir. 2018); Jack Metzler, *Cleaning Up Quotations*, 18 J. App. Prac. & Process 143 (Fall 2017).

the mother and the children share a bond. Nevertheless, the parents were given more than one year to demonstrate their ability to care for their children, and even after participating in the services provided, serious concerns remain about the parents' ability to recognize situations that threaten the children's safety, as well as their willingness to seek out help when needed. We are unable to conclude that the parents' parenting ability will improve in the foreseeable future to enable them to raise their children without ongoing help from others, even given additional time. Changing the level of supervision of visits to less than fully supervised was clearly not in the children's best interests, and the DHS's decision not to offer semi-supervised visitation under this record is not unreasonable and does not evidence a lack of reasonable efforts by the DHS for reunification.

The children have thrived in foster care and are adoptable. Considering the children's safety, the best placement for furthering the long-term nurturing and growth of the children, and the physical, mental, and emotional condition and needs of the children, we agree with the juvenile court that termination of the parents' parental rights is in the children's best interests.

### III. Conclusion.

Because we find clear and convincing evidence that grounds for termination of the mother's parental rights were established under section 232.116(1)(h), termination of the parents' parental rights is in the children's best interests, the DHS provided reasonable services for reunification, and an extension of time for reunification is not supported under the facts of the case, we affirm the juvenile court's order terminating the parents' parental rights.

**AFFIRMED ON BOTH APPEALS.**